JEROME R. PRASSAS *et al.*, Plaintiffs-Appellees, *v.* NICHOLAS W. PRASSAS & CO., *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 81-1001

Opinion filed November 18, 1981.—Rehearing denied January 7, 1982.

Robert L. Byman and Julie C. Reynolds, both of Jenner & Block, of Chicago, for appellants.

Phillip E. Couri and John D. Brennan, both of Couri & Economas, of Winnetka, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Jerome R. Prassas and Philip G. Prassas, brought this action to obtain information with regard to certain properties, including the Woodland Heights Shopping Center, in which both plaintiffs and defendants, Nicholas W. Prassas and Nicholas W. Prassas & Co., have an interest. Plaintiffs also sought to enjoin defendants from making extraordinary expenditures on those properties without plaintiffs' prior written approval. Defendants appeal from an interlocutory order granting plaintiffs' motion for the appointment of a receiver to manage the shopping center. Defendants contend that the trial court erred in appointing a re-

ceiver absent a clear showing of fraud or an imminent danger of dissipation of the business assets. Defendants also argue that the court erred in denying them a full hearing and in failing to comply with statutory bond requirements.

Prior to 1974, defendant corporation was known as George W. Prassas & Co. In 1961, the corporation entered into a joint venture agreement with Streamwood Home Builders pursuant to which George W. Prassas & Co. developed and operated the shopping center in question. Title was held in a land trust with George W. Prassas & Co. as sole beneficiary. Prior to his death in 1966, George W. Prassas owned 51 percent of the stock of the corporation. His brother, defendant Nicholas Prassas, owned 49 percent. At his death George left 1 percent to defendant and 50 percent to the George W. Prassas trust for the benefit of his plaintiff sons. Thereafter stock ownership was divided equally between defendant and the George W. Prassas trust.

On August 12, 1974, plaintiffs entered into a partial liquidation agreement with George W. Prassas Co. which provided that the company name be changed to Nicholas W. Prassas & Co. Plaintiffs agreed to exchange all their stock for $326,000 in cash and "undivided one-half of the Company's rights and interests" in various commercial properties, including the shopping center in question. The agreement further provided that plaintiffs' portion of the corporation's interest in the shopping center "shall be deemed to have been assigned by the Company [to plaintiffs] * * * but * * * [plaintiffs] shall not thereby become a partner * * *." Subsequent to this agreement the properties were managed solely by defendant Nicholas.

On August 17, 1977, plaintiffs filed suit seeking to obtain certain financial and operational information which Nicholas had been unwilling to share with them and to enjoin extraordinary expenditures by Nicholas in connection with the properties absent plaintiffs' prior written approval. Plaintiffs asserted that defendant Nicholas had improperly withheld funds to which they were entitled and requested the appointment of a receiver to manage the properties during the pendency of the action. Defendants countered that the liquidation agreement entitled plaintiffs to a mere economic interest in one-half the proceeds received by defendant corporation in connection with the properties. Defendants maintain that the plaintiffs have no right to veto expenditures or to acquire information beyond that pertaining to their own economic interest.

At the hearing on plaintiffs' motion for the appointment of a receiver to manage the shopping center, Nicholas testified as an adverse witness. He stated that he had withheld from plaintiffs money owed by plaintiffs to a bank and then had paid the bank directly. He also withheld an additional $5000 in anticipation of a subsequent quarterly payment to the

bank. While Nicholas stated that he was entitled to hold the moneys, defense counsel expressed a willingness to pay plaintiffs and later seek reimbursement in court if such payment would avoid the appointment of a receiver. Nicholas also waited four years to advise plaintiffs of their share of a condemnation award; he had been seeking a larger award and held the funds until the account was final. As to the allegations that information was withheld, Nicholas asserted that he provided plaintiffs with semi-annual accountings which showed income and disbursements and that such accountings were all that were required. Nevertheless, when the court expressed an intention to appoint a receiver, defense counsel offered to provide plaintiffs with whatever information the court considered reasonable.

After Nicholas testified as an adverse witness, the court indicated that it had heard sufficient testimony and was prepared to enter some kind of order unless the parties settled their dispute. The hearing was continued twice for this purpose. When the parties failed to settle the matter, defense counsel stated that the appointment of a receiver would be detrimental because a sale of the property was being negotiated. Counsel also requested a full hearing, but the court denied the request and a receiver was appointed.

■■ A motion for the appointment of a receiver rests in the sound discretion of the trial court. (*Steinwart v. Susman* (1968), 94 Ill. App. 2d 471, 238 N.E.2d 200.) Yet, the appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution. (*Bagdonas v. Liberty Land & Investment Co.* (1923), 309 Ill. 103, 140 N.E. 49; *Poulakidas v. Charalidis* (1979), 68 Ill. App. 3d 610, 386 N.E.2d 405.) The standards by which the appointment can be justified are exceptionally stringent. It is appropriate only when dissension, fraud, misconduct or mismanagement exist which make it impossible for the business to continue or to preserve its assets. *Bagdonas v. Liberty Land & Investment Co.*

■■ That there is dissension between the parties in the present case is beyond question. Furthermore, it was established that Nicholas had refused certain information and had withheld certain funds. What was not determined was whether defendant had a right to do so. Even if it were shown that Nicholas' acts constituted misconduct, however, neither misconduct nor dissension alone can justify the appointment of a receiver. It must be shown that the dissension or misconduct made it impossible for the business to continue to preserve its assets (*Duval v. Severson* (1973), 15 Ill. App. 3d 634, 304 N.E.2d 747), or created a danger that the property be placed beyond the jurisdiction of the court. (*Hurst v. Papierz* (1973), 16 Ill. App. 3d 574, 306 N.E.2d 532.) No evidence was presented nor were allegations made by plaintiffs which would indicate the assets were in

jeopardy. On the contrary, Nicholas testified that the shopping center was operating at a profit. Although the possibility of a sale of the shopping center could infer a danger that the property be placed beyond the court's jurisdiction, such a result could be prevented by less drastic means. The appointment of a receiver is warranted only where there is no other adequate means to secure the desired result. *Poulakidas v. Charalidis.*

■■ Plaintiffs contend that the cases which set such stringent standards for appointment of a receiver are distinguishable because they involved corporate assets and dissolution was sought. The rationale behind the stringent standards, however, is based neither on the nature of the business relationship between the parties nor on the ultimate remedy sought. Rather, it stems from the court's recognition that its power to appoint a receiver is in derogation of the fundamental property right of the legal owner of property to possession thereof. *(Bagdonas v. Liberty Land & Investment Co.)* Even where the appointment of a receiver is temporary and for the limited purpose of preserving the status quo pending the outcome of the suit, these rigid standards must be applied. *(Firebaugh v. McGovern* (1949), 404 Ill. 143, 88 N.E.2d 473; *Poulakidas v. Charalidis.)* The trial court here erred in appointing a receiver for the shopping center.

In view of our holding, it is unnecessary to consider defendants' other contentions.

For the reasons stated, the order of the circuit court of Cook County appointing a receiver is reversed.

Order reversed.

McGILLICUDDY and WHITE, JJ., concur.