871 F.2d 1336
 PEOPLE OF the STATE OF ILLINOIS, ex rel. Neil F. HARTIGAN,
Attorney General of Illinois, Plaintiff-Appellee,
v.
George PETERS, doing business as MGM Motors and George
Peters, individually, Defendant-Appellant.
 No. 88-1555.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 1, 1988.
Decided April 5, 1989.
 
 Paul E. Peldyak, Joseph N. Rathnau, Chicago, Ill., for defendant-appellant.
 Margaret M. Drewko, Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellee.
 Before WOOD, Jr., RIPPLE, and MANION, Circuit Judges.
 Harlington WOOD, Jr., Circuit Judge.
 
 
 1
 In this case we examine the limitations on a district judge's authority to enjoin a defendant and place his assets in receivership prior to a full hearing on the merits. The district judge enjoined Appellant George Peters from activities related to the alleged offense of selling cars with understated mileage readings and placed all Peters' known assets in receivership pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act or the Act). Peters complains that notice and other aspects of the hearing were defective. He also argues that the injunction and receivership were overbroad. We agree with the district judge that the notice and hearing were not defective but reverse and remand the district judge's denial of the motion to dissolve the injunction and vacate the receivership because we find that the terms of the injunction and receivership exceed the parameters established by the Illinois Consumer Fraud Act.
 
 I. FACTS
 
 2
 On February 11, 1987 the Illinois Attorney General filed a complaint for injunctive and other relief and a motion for a temporary restraining order and order freezing assets (TRO) naming Peters as defendant. The Attorney General alleged that Peters violated the Federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. Secs. 1981-1991 (1982), and the Illinois Consumer Fraud Act, Ill.Ann.Stat. ch. 121 1/2, paragraphs 261-272 (Smith-Hurd Supp.1988). According to the complaint, Peters purchased cars, set back the mileage reading on the odometers, and then under a variety of assumed names resold the cars to unsuspecting purchasers. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, the district judge granted the Attorney General's motion for a TRO without notice to Peters and set a hearing date for February 21, 1987.
 
 
 3
 On February 20, 1987, one day before the TRO expired, the Attorney General asked the district judge to extend the TRO because the process server could not locate Peters. The district judge extended the TRO to March 3, 1987 and rescheduled the hearing for that morning.
 
 
 4
 On March 2, 1987 (one day before the hearing) John O'Brien, an investigator for the Attorney General, served Peters with papers. O'Brien testified that he walked up to Peters, identified himself as an investigator for the Attorney General, and handed Peters the papers. Peters touched the papers but then began to back away. Before Peters could retreat completely, however, O'Brien put the papers into Peters' coat pocket. Peters then took the papers out of his coat pocket, flung them to the ground, got in his car and drove away.
 
 
 5
 Not surprisingly, Peters did not appear the next day at the scheduled hearing. Based on the testimony of O'Brien and affidavits attached to the motion for the TRO, the district judge granted the Attorney General's motion for a preliminary injunction and also granted the Attorney General's motion to place all of Peters' known assets in receivership.
 
 
 6
 Approximately four and a half months later--on July 20, 1987--Peters' counsel filed an appearance. On October 2, 1987 Peters' counsel answered the complaint and a set of interrogatories. On October 9, 1987 Peters' counsel moved to quash service and on November 7 and December 7 the district judge heard testimony on the motion. Peters asserted that he was never served but the district judge, after taking extensive testimony, ruled otherwise.
 
 
 7
 Peters then moved to dissolve the preliminary injunction and to vacate the appointment of the receiver. The district judge again heard arguments on the adequacy of notice as well as challenges to the scope of the receivership. The district judge then denied the motions, reiterating many of the reasons and findings he gave in support of the injunction and appointment of the receiver. Peters appealed.
 
 II. ANALYSIS
 
 8
 This court previously examined whether we have jurisdiction to review the district judge's denial of defendant's motion to vacate the appointment of the receiver. See Illinois ex rel. Hartigan v. Peters, 861 F.2d 164 (7th Cir.1988). In our earlier opinion, we stated that 28 U.S.C. Sec. 1292(a)(1) explicitly gave us jurisdiction to review the denial of the motion to dissolve the injunction. See 861 F.2d at 165. We also held that we had pendent jurisdiction over the denial of the motion to vacate the receivership because it was "inextricably intertwined" with the injunction order and compelling reasons existed for our review of both motions at the same time. See 861 F.2d at 166.
 
 
 9
 We did not address, however, in our earlier decision the issue of the scope of review. In reviewing a denial of motions to dissolve an injunction and vacate a receivership, we are not called upon to examine the district judge's original decision to impose an injunction and place assets in receivership. To obtain review of a district judge's decision to grant an injunction, the defendant must seek review through a direct appeal within thirty days of the district judge's decision or give extraordinary reasons for not having done so. Fed.R.App.Proc. 4(a). See Buckhanon v. Percy, 708 F.2d 1209, 1214 (7th Cir.), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1983). Peters did not bring a direct appeal within thirty days, nor are his reasons for not bringing a direct appeal extraordinary.
 
 
 10
 The scope of our review is therefore limited to the findings and conclusions underlying the district judge's denial of the motions to dissolve the injunction and vacate the receivership. See Buckhanon, 708 F.2d at 1213. See also Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1418 n. 4 (9th Cir.1984). Fortunately for Peters, the district judge based his order denying the motions to dissolve the injunction and vacate the receivership on findings that he had also relied upon in granting the injunction and receivership. In effect, the district judge gave Peters in the hearing on the motions to dissolve the injunction and vacate the receivership an opportunity to challenge the judge's previous findings and provide new arguments on the matter. Because the district judge based his denial of the motion to dissolve the injunction and vacate the receivership on findings identical to those previously made, as well as on new findings, and 28 U.S.C. Sec. 1292 permits us to pragmatically review the denial of a motion to dissolve an injunction, we will review issues that were both part of the district judge's initial decision to grant an injunction and appoint a receiver and his denial of the motion to dissolve the injunction and vacate the receivership. See 9 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 110.02 (2d ed. 1985). Cf. Fern v. Thorp Public School, 532 F.2d 1120, 1126-30 (7th Cir.1976). We realize that our review, because it calls into question findings underlying both the injunction and the denial of the motion to dissolve the injunction, may undermine the terms of the injunction and receivership. Those findings, nevertheless, addressed in the order refusing the motion to dissolve the injunction and vacate the receivership, are part of the record before us on appeal. See Godinez v. Lane, 733 F.2d 1250, 1255-57 (7th Cir.1984). In taking this pragmatic approach, however, we are not condoning attempts to circumvent the thirty-day filing requirement for a direct appeal through a motion to dissolve an injunction.
 
 
 11
 Peters first challenges aspects of the hearing at which the court imposed the injunction and receivership: the sufficiency of notice, the oral nature of the motion made by the Attorney General, the adequacy of the evidence, and the constitutionality of the Illinois statute under which the Attorney General brought the action. He then challenges the specificity and scope of the injunction and receivership. We affirm the district court's decision with respect to the issues raised concerning the hearing. We agree with Peters, however, that the injunction and receivership are too broad because they extend to assets that have not been connected to the alleged illegal activity. We therefore reverse and remand in part to allow the district court to reconsider the denial of the motion to dissolve the injunction and vacate the receivership and to modify the scope of the injunction and receivership accordingly.
 
 A. The Hearing
 1. Notice
 
 12
 Peters argues that notice of the hearing for the preliminary injunction and receivership violated the due process clause of the fourteenth amendment and Rule 65(a)(1) of the Federal Rules of Civil Procedure.[1] According to Rule 65(a)(1), the adverse party must be given notice before a court issues a preliminary injunction. Rule 65 does not specify what constitutes sufficient notice. One court, however, has stated that notice should apprise a defendant of a hearing and provide adequate time to prepare a defense. See SEC v. Capital Growth Co., S.A. (Costa Rica), 391 F.Supp. 593, 600 (S.D.N.Y.1974). We leave the question of what constitutes sufficient notice primarily to the district court's discretion and apply a deferential standard of review. See, e.g., United States v. Alabama, 791 F.2d 1450, 1458 (11th Cir.1986), cert. denied, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987) (abuse of discretion standard); SEC v. G. Weeks Sec., Inc., 678 F.2d 649, 651 (6th Cir.1982) (abuse of discretion review); SEC v. Capital Growth Co., S.A. (Costa Rica), 391 F.Supp. at 600 ("sufficiency of notice is for the trial court's determination under the circumstances of each particular case").
 
 
 13
 With regard to due process, the Supreme Court has directed us to look at the totality of circumstances in determining whether notice was reasonable:
 
 
 14
 An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.... But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.
 
 
 15
 Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted).
 
 
 16
 As other courts have suggested, one circumstance we may consider in evaluating the sufficiency of notice is whether the alleged inadequacies in the notice prejudiced the appellant. See, e.g., Alabama, 791 F.2d at 1458 (appellant failed to demonstrate that it was prejudiced by one to three day notice). Cf. Gottfried v. Frankel, 818 F.2d 485, 492-93 (6th Cir.1987) (petition served without copy of summons insufficient grounds for dismissal without proof of prejudice); United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir.1984) (summons which specifies the incorrect time for filing answer does not justify dismissal absent showing of prejudice).
 
 
 17
 Peters claims that there is a host of problems with the notice but he fails to convince us that any of these defects prejudiced him. Peters points out that he was served, if he was served at all, one day before the hearing for the preliminary injunction (he protests to this day that he was never served). He also argues that the papers served may not have included the second order that extended the TRO and contained the new date, time, and place for the hearing. (The original order authorizing the TRO did not contain any details about the March hearing.) Even if he was served the second order, he adds, it may have omitted the time and room number for the hearing.
 
 
 18
 Peters' arguments are filled with conjecture, however, because he does not know which papers were actually served or what they contained. He does not know because he refused to look at the papers and instead threw them on the ground. The district judge heard substantial testimony from both sides regarding service and found that Peters was served on March 2, 1987, as Investigator O'Brien testified. We have reviewed the record and believe that the judge's findings were well within his discretion.
 
 
 19
 It is difficult to see how Peters was prejudiced by alleged defects in papers that he refused to read. Peters' actions indicate that he intended to ignore the lawsuit. He now uses errors (that he has not established were made) as a means to avoid an unfavorable decision. In fact, Peters' counsel did not appear on his behalf for four and a half months following service, even though Peters presumedly received actual, if not legal, notice when the court placed all his known assets in receivership. The evidence indicates that Peters would not have attended the hearing even if the papers had been letter-perfect and served weeks in advance. The circumstances indicate that Peters was not prejudiced by any alleged defects in the notice given.
 
 
 20
 Given the lack of prejudice demonstrated, the circumstances indicate that Peters received reasonable notice that satisfied Rule 65(a) and the due process clause. The Attorney General's investigator served Peters twenty-four hours before the hearing, which provided Peters with enough time to retain a lawyer who could at least appear at the hearing. See Alabama, 791 F.2d at 1458. The process server testified that he served a copy of the second order that, at a minimum, contained the date for the hearing and the judge's signature. The district judge held that Peters failed to rebut this testimony. Even assuming that the second order omitted the time of the hearing, the order and other papers served put Peters on notice that he should contact the court to determine what was going on. We find that Peters had notice adequate to satisfy due process and Rule 65(a).
 
 
 21
 Peters also argues that the notice violated the due process clause because it did not specifically state that the Attorney General would seek the appointment of a receiver at the hearing. The complaint, however, directed Peters to the provision of the Illinois Consumer Fraud Act that gave the court explicit authority to appoint a receiver. See Ill.Ann.Stat. ch. 121 1/2, p 267 (Smith-Hurd Supp.1988). The complaint was also titled as a "complaint for injunctive and other relief." The investigator testified that he served Peters with a copy of the complaint. We believe this was sufficient notice under the circumstances to satisfy the due process clause.
 
 
 22
 Peters was given a full and fair hearing once he came before the court, minimizing the effect of any possible defects in notice. See SEC v. Capital Growth Co., S.A. (Costa Rica), 391 F.Supp. at 601 (hearing to set aside the injunction and receivership effectively vitiates any inadequacies in the notice); Banke v. Novadel-Agene Corp., 130 F.2d 99, 101 (6th Cir.), cert. denied, 317 U.S. 692, 63 S.Ct. 324, 87 L.Ed. 554 (1942) (defect in notice cured by a rehearing on the motion to set aside the permanent injunction). Cf. American Surety Co. v. Baldwin, 287 U.S. 156, 168, 53 S.Ct. 98, 102, 77 L.Ed. 231 (1932) ("Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment."). When he appeared, Peters moved to dissolve the injunction and vacate the appointment of the receiver. He also challenged service. The court conducted hearings on both motions. Peters submitted objections. He can not claim that he was not heard on the validity of the injunction and receivership.
 
 2. Oral Motion
 
 23
 Peters next argues that we should reverse the district judge because the Attorney General made the original motion to obtain the injunction and receivership orally. According to Peters, the Attorney General should have submitted a written motion. Peters cites Rule 7(b)(1) of the Federal Rules of Civil Procedure as support for his position but the very language that he quotes disproves his argument: "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing." Fed.R.Civ.P. 7(b)(1) (emphasis added). The type of hearing at which counsel can make an oral motion is one in which the proceedings are recorded. IBM v. Edelstein, 526 F.2d 37, 47 (2d Cir.1975) (citing Alger v. Hayes, 452 F.2d 841, 843 (8th Cir.1972)). The Attorney General made the motion at a recorded hearing. Peters' claim that the oral motion voided the injunction is without merit.
 
 3. Sufficiency of the Evidence
 
 24
 Peters claims that the receivership and injunction were based on insufficient evidence and violated the right to a fair hearing under the due process clause. He argues that much of the testimony submitted in the affidavits attached to the motion for the TRO and subsequently incorporated in the motion for the injunction and receivership was hearsay and that he had no opportunity to test the credibility of the affiants.
 
 
 25
 As a general rule, the district judge should not resolve a motion for a preliminary injunction on the basis of affidavits alone. Medeco Sec. Locks, Inc. v. Swiderek, 680 F.2d 37, 38 (7th Cir.1981). Before imposing an injunction, the district judge normally should conduct an evidentiary hearing to permit the parties to address credibility issues. See id. The judge's order is not per se invalid or unconstitutional, however, simply because it was based on written documentation. We have in the past reviewed a district judge's denial of an injunction based solely on written affidavits using an abuse of discretion standard. Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1439 (7th Cir.1986). We will review a district judge's decision not to dissolve an injunction or vacate a receivership using the same standard. See Centurion Reinsurance Co. v. Singer, 810 F.2d 140, 143 (7th Cir.1987) (appellate court will review decision to dissolve injunction using abuse of discretion standard).
 
 
 26
 The district judge acted within his discretion when he denied the motion to dissolve the injunction and vacate the appointment of the receiver. To obtain an injunction authorized by the Illinois Consumer Fraud Act, the Attorney General must have provided some evidence that the defendant violated the Act. Harm to the public is presumed. People ex rel. Hartigan v. Stianos, 131 Ill.App.3d 575, 580, 86 Ill.Dec. 645, 649, 475 N.E.2d 1024, 1028 (1985); see also Ill.Ann.Stat. ch. 121 1/2 p 262 (Smith-Hurd Supp.1988) ("unfair or deceptive acts ... are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby"). Cf. Ringling Bros.-Barnum & Bailey Combined Shows Inc. v. Celozzi-Ettelson, 855 F.2d 480, 484 n. 4 (7th Cir.1988) (consideration of the factors generally required to obtain a preliminary injunction probably unnecessary where Illinois trademark statute explicitly authorizes injunction). The Illinois Consumer Fraud Act states:
 
 
 27
 unfair or deceptive acts or practices, including ... misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, ... in the conduct of any trade or commerce are hereby declared unlawful.
 
 
 28
 Ill.Ann.Stat. ch. 121 1/2 p 262 (Smith-Hurd Supp.1988).
 
 
 29
 The Attorney General submitted four affidavits in support of the preliminary injunction. The district judge did not abuse his discretion when he found that the affidavits supplied sufficient proof that Peters violated the Act. The affidavits establish that Peters in all likelihood misrepresented the mileage on the odometers of cars he sold. A consumer testified in an affidavit that a person she identified by photograph as George Peters sold her a car which showed 17,000 miles on the odometer. The evidence indicates that the car actually had 48,000 miles on it. An investigator for the Attorney General testified in an affidavit that Peters attempted to sell him a car with a similar discrepancy in mileage. Although Peters argues that this testimony was based on hearsay, he did not appear at the injunction hearing to contest the admittance of either affiant's testimony. He also did not rebut their testimony with witnesses or responsive affidavits at the hearing to dissolve the injunction and vacate the receivership.
 
 
 30
 Peters fails to establish how the judge's reliance on affidavits in Peters' voluntary absence violated the due process clause. The court gave Peters the opportunity for a full and fair hearing in keeping with his constitutional rights but Peters ignored the opportunity. Peters can not now complain that the judge based his decision on evidence that tended to incriminate Peters when Peters was the one who decided not to appear. Furthermore, the court permitted Peters to refute the affidavits submitted by the Attorney General in a hearing on the motion to dissolve the injunction. The district judge more than adequately satisfied due process mandates.
 
 4. The Illinois Consumer Fraud Act
 
 31
 Peters continues his due process attacks by claiming that the "Illinois Consumer Fraud Act as applied in the instant case is unconstitutional." Under this caption, Peters reiterates many of the claims we have already addressed. Peters can not complain that the statute as applied violated his due process rights if he himself caused the hearing to be less than adversarial. If we adopted Peters' reasoning, defendants could create valid due process claims by refusing to appear. The due process clause was not intended to protect or encourage such conduct.
 
 
 32
 Peters hints, however, of a larger due process issue. He claims that the Illinois Consumer Fraud Act itself violates the due process clause because it permits the Attorney General to tie up a defendant's property without hearing or notice. A statute that permits a person to take another's property without giving the owner the opportunity to be heard may violate the due process clause. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971). The statute at issue in Fuentes permitted persons seeking replevin to obtain control over another person's property through the filing of a complaint and security bond with the clerk of court. See id. at 74, 92 S.Ct. at 1991. The Illinois Consumer Fraud Act, in comparison, requires the Attorney General to go to court, thus invoking the oversight of a judge and the rules of procedure and evidence that govern a court. See Ill.Ann.Stat. ch. 121 1/2 p 267 (Smith-Hurd Supp.1988); see also Scott v. Association for Childbirth at Home, 88 Ill.2d 279, 299, 58 Ill.Dec. 761, 772, 430 N.E.2d 1012, 1023 (1981) (judicial oversight of the Illinois Consumer Fraud Act safeguards against abuse and excessive zeal of administrative investigations). These rules explicitly require the court to conduct a hearing soon after the TRO or other extraordinary relief is authorized. See, e.g., Fed.R.Civ.P. 64 (federal rule regarding seizure of property); Fed.R.Civ.P. 65 (federal rule governing injunctions); Ill.Ann.Stat. ch. 110 p 11-101 (Smith-Hurd Supp.1988) (state rule regarding TROs); Ill.Ann.Stat. ch. 110 p 11-102 (Smith-Hurd Supp.1988) (state rule regarding notice of injunction); cf. United States v. Thier, 801 F.2d 1463, 1468 (5th Cir.1986) (where nothing in federal statute negates applicability of rules of civil procedure, Rule 65 applies and statute satisfies due process clause). Because the Illinois Consumer Fraud Act does not supplant the rules of court that protect defendant's right to an expedient hearing, it does not violate Peters' due process rights. Cf. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (involvement of commonwealth officials indicates that statute did not violate due process clause).
 
 
 33
 B. The Scope of the Injunction and Receivership
 
 
 34
 In addition to raising procedural and evidentiary issues, Peters challenges the scope of the injunction and receivership.[2] The district judge enjoined Peters from the following: buying or selling any motor vehicle other than his own personal vehicle; withdrawing or transferring money from his two known bank accounts; removing, destroying or disposing any of his property; permitting any other entity from removing, destroying or disposing any of his property; and expending any amount of money in excess of $100 without prior approval from a court-appointed receiver. The powers granted to the receiver were equally broad: the receiver could collect all the goods, chattels, rights, credits, moneys, records, documents, real property, papers, bills, notes, choses in action, and "property of every description owned or possessed" by Peters. Peters claims that the injunction and receivership are overbroad because they affect assets that were not derived from the alleged illegal activity as required by the Illinois Consumer Fraud Act. We review the district judge's decision using an abuse of discretion standard. Prassas v. Nicholas W. Prassas & Co., 102 Ill.App.3d 319, 321, 58 Ill.Dec. 86, 89, 430 N.E.2d 28, 30 (1st Dist.1981) (appointment of receiver rests in sound discretion of the trial court); Plasti-Drum Corp. v. Ferrell, 70 Ill.App.3d 441, 452, 26 Ill.Dec. 723, 732, 388 N.E.2d 438, 447 (3d Dist.1979) (grant or denial of an injunction is within court's discretionary powers and will not be reversed unless an abuse of discretion is shown).
 
 
 35
 The Attorney General claims that the Illinois Consumer Fraud Act gave the court full authority to impose an injunction and appoint a receiver that effectively tied up all of Peters' known assets. The Act describes the power to obtain and to impose an injunction as follows:
 
 
 36
 Whenever the Attorney General or a State's Attorney has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by ... this Act to be unlawful, and that proceedings would be in the public interest, he or she may bring an action in the name of the People of the State against such person to restrain by preliminary or permanent injunction the use of such method, act or practice. The Court, in its discretion, may exercise all power necessary, including but not limited to: injunction; ... appointment of receiver.
 
 
 37
 Ill.Ann.Stat. ch. 121 1/2 p 267 (Smith-Hurd Supp.1988). The statute further outlines the scope of a receiver's authority:
 
 
 38
 When a receiver is appointed by the court pursuant to this Act, he shall have the power to sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description, derived by means of any practice declared to be illegal and prohibited by this Act, including property with which such property has been mingled if it cannot be identified in kind because of such commingling.
 
 
 39
 Ill.Ann.Stat. ch. 121 1/2 p 268 (Smith-Hurd Supp.1988) (emphasis added).
 
 
 40
 Contrary to the Attorney General's position, we read these provisions as placing some restrictions on the district judge's authority to freeze Peters' assets. Although not a model of clarity, the statutory provision permits the court to enjoin a defendant from engaging in methods, acts or practices declared by the Act to be unlawful. The defendant is still entitled to engage in lawful activity. See In re Liss, 59 B.R. 556, 560 N.D.Ill.Bkrtcy. (1986) (Attorney General does not have authority under the Illinois Consumer Fraud Act to enjoin lawful conduct). The injunction as written prevents Peters from engaging in activity that most people would consider normal and lawful--such as discarding an old newspaper or paying for automobile insurance without the receiver's permission. Even given Peters' propensity to discard important documents, the court can not enjoin him from engaging in conduct unassociated with the illegal practices he is accused of committing. Peters must be given some leeway to cover his basic living expenses, particularly in light of the Attorney General's delay in pursuing this lawsuit. Cf. Thier, 801 F.2d at 1471 ("defendant's need for living expenses and his right to the attorney of his choice are factors that the district judge must consider in deciding whether and to what extent to grant an asset-freezing injunction").
 
 
 41
 The provision of the Illinois Consumer Fraud Act that outlines the scope of the receiver's authority specifically states that the assets placed in receivership must have been "derived from" the prohibited activities. See Ill.Ann.Stat. ch. 121 1/2 p 268 (Smith-Hurd Supp.1988). The Attorney General made no attempt to discern which assets were derived from the alleged illegal activity. The Attorney General provided no evidence that the buildings or properties placed in receivership were purchased with illegally obtained money. Likewise, the Attorney General did not identify whether money in the enjoined savings accounts was linked to the alleged illegality. As Peters argues, the Attorney General could have examined the bank's records to determine which funds were added to the accounts after the first alleged violation of the Illinois Consumer Fraud Act.
 
 
 42
 The explicit terms of the Illinois Consumer Fraud Act require the court to assess whether the defendant's assets were at least remotely connected to the illegal activity, methods or practices. This approach is in keeping with other Illinois statutes that permit the state to take control of a defendant's assets prior to full trial if the state establishes a nexus between the assets and the alleged illegality. See, e.g., Ill.Ann.Stat. ch. 23 p 8A-7(d)(1) (Smith-Hurd Supp.1988) (In order to apply forfeiture provision to defendants accused of welfare fraud, state must prove by preponderance of the evidence that property was acquired or maintained as a result of the offense); Ill.Ann.Stat. ch. 56 1/2 p 1505(a)(5) (Smith-Hurd Supp.1988) (proceeds traceable to violation of the Controlled Substance Act may be forfeitable); People v. Snyder, 52 Ill.App.3d 612, 613-14, 10 Ill.Dec. 299, 301, 367 N.E.2d 752, 754 (2d Dist.1977) (under Cannabis Control Act, state must establish by preponderance of the evidence that article had rational relationship to unlawful purpose). We find that the district judge abused his discretion when he wholly failed to examine the source of the assets.
 
 
 43
 The Attorney General argues that Peters' illegally obtained funds were commingled with his other funds and therefore are outside the tracing requirement of Ill.Ann.Stat. ch. 121 1/2 p 268. The Attorney General states that, according to this court's decision in In re Teltronics, Ltd., 649 F.2d 1236 (7th Cir.1981), "it is not necessary that the defrauded consumers' money be directly traceable to the defendant's 'frozen accounts' since under the Consumer Fraud Act a receiver's powers are not limited to those of a common law receiver." This statement, however, misconstrues our decision in In re Teltronics and the plain language of the Illinois Consumer Fraud Act. Before Peters' accounts can be placed in receivership, there must be some evidence that some illegal funds have been added to the accounts. In re Teltronics involved a dispute between the receiver appointed in bankruptcy to oversee defendant's funds and the receiver appointed under the Illinois Consumer Fraud Act. See id. at 1238-39. This court repeatedly relied in In re Teltronics on defendant's conviction for mail fraud as proof that the funds at issue were the product of fraud. See 649 F.2d at 1239-41. We also noted that the defrauded consumers could "roughly identify" which money was theirs. See 649 F.2d at 1240. The Illinois Consumer Fraud Act explicitly requires that, at a minimum, the accounts contain "commingled" illegal funds.
 
 
 44
 The Attorney General did not establish that Peters put any of the alleged illegal funds in the two enjoined accounts. The Attorney General could have established this, for example, through evidence that Peters deposited relatively large sums of money in the accounts within the time frame of the alleged illegal activity. The Attorney General could also have been more definite as to the amount of money at issue. The record shows that the district judge authorized the receiver's control over Peters' bank accounts without any evidence that illegal funds had been commingled with legally obtained funds within these accounts. Without evidence that the accounts contained some illegal funds, the court abused its discretion by denying the motion to vacate the receivership.
 
 
 45
 Although the statute authorizes the court to impose an injunction and appoint a receiver, the truth remains that these are extraordinary remedies. See, e.g., Prassas, 102 Ill.App.3d at 321, 58 Ill.Dec. at 108, 430 N.E.2d at 50 ("appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution"); Plasti-Drum Corp. v. Ferrell, 70 Ill.App.3d at 452, 26 Ill.Dec. at 732, 388 N.E.2d at 447 ("an injunction is an exceptional remedy which is not granted as a matter of course, but with great caution and only when plaintiff's right to such relief is clearly established"). Without a trial on the merits the Attorney General has not proven defendant's culpability; Peters retains the right to engage in lawful activity and use his lawfully obtained, unmingled assets. Furthermore, this is a civil action. Illinois does not permit injunctive relief or forfeiture in criminal matters without proof of a nexus to illegal activity and we see no reason why it would permit such relief in a civil matter. The court must tailor its decisions to permit the defendant to carry out legal activities and use assets lawfully obtained. We therefore REVERSE and REMAND to the district court to reassess in light of our decision its denial of the motion to dissolve the injunction and vacate the receivership. Each party shall bear his own costs.
 
 
 
 [1]
 At first glance, the parties seem to be relitigating the personal jurisdiction issue in this appeal. Peters is not, however, appealing the district judge's finding that the court had jurisdiction over his person. (If Peters was raising such a claim, we would have to consider a waiver argument.) Rather, Peters argues that the notice provision of Rule 65(a) and the due process clause of the fourteenth amendment place separate limitations on the type of notice that he could receive. Although jurisdiction principles, Rule 65(a), and the due process clause involve a similar set of facts and concerns, we examine the requisites of each source of law separately. Therefore, we will treat the district judge's findings with regard to personal jurisdiction as findings that are pertinent but not necessarily dispositive on the issues raised here
 
 
 [2]
 Peters has asked us to certify to the Illinois Supreme Court the issue raised concerning the scope of the receivership. We decline to certify the issue because the language of the Illinois Consumer Fraud Act and Illinois case law provide us with sufficient guidance on the issue