# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Smith*, 2012 IL App (1st) 113591

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN R. SMITH, Defendant-Appellant (Boss Construction, Inc., an Illinois corporation; and Boss Home Improvement, Inc., an Illinois corporation; Defendants). |
| District & No. | First District, First Division<br>Docket No. 1-11-3591 |
| Filed | October 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not abuse its discretion by enjoining defendant from future home repair or remodeling work in Illinois based on his violations of the Consumer Fraud Act, the Roofing Act and the Home Repair Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-15913; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Querrey & Harrow, Ltd., of Chicago (Christopher P. Keleher, of counsel), for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for the People. |
| | |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. |
| | Justices Karnezis and Rochford concurred in the judgment and opinion. |

## OPINION

¶ 1    The appellant, Steven Smith, appeals from the circuit court's ruling granting summary judgment in favor of the State on its complaint against him and two corporations for which he was an agent, Boss Construction, Inc., and Boss Home Improvement, Inc. The corporations are not parties to this appeal. The complaint alleged that the defendants violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2008)), section 20 of the Home Repair and Remodeling Act (Home Repair Act) (815 ILCS 513/20 (West 2008)), and section 9 of the Illinois Roofing Industry Licensing Act (Roofing Act) (225 ILCS 335/9 (West 2008)). On appeal, the appellant argues that the circuit court erred because (1) it failed to require that the State prove his intent to defraud as a predicate to its Consumer Fraud Act ruling; (2) to find him liable under the Roofing Act, it relied on a finding that he was not licensed, in spite of the fact that entities and workers related to his business were licensed; and (3) it imposed too harsh a remedy when it permanently enjoined him from future home repair or remodeling work in Illinois. For the reasons that follow, we affirm the circuit court's judgment.

¶ 2    In April 2009, the State filed a complaint alleging that the defendants were in the business of providing home repair services, including roofing services, despite the fact that none of them were licensed roofing contractors. The complaint further alleged that the defendants did not provide customers with an informational pamphlet as required by the Home Repair Act (815 ILCS 513/20 (West 2008)) or with a form notifying them of their right to cancel as required by the Consumer Fraud Act (815 ILCS 505/2B (West 2008)). According to the complaint, the defendants took at least partial payment for several jobs but then failed to complete them as promised and refused to refund any payment.

¶ 3    For illustrative purposes, the complaint recounted the experiences of several consumers who had dealt with the defendants. For example, the complaint alleged, the defendants' salesperson told Philip and Jeanette Bradley in June 2008 that the defendants could complete their roof, soffit, gutter, window, and siding work for $49,000. The Bradleys took out a loan

for the money, signed a contract, and paid a $24,500 deposit. The complaint alleged that they were never given an informational pamphlet. When the project was delayed, the defendants' salesperson attributed the delays to problems in the permit process and the fact that their window order had not yet been delivered. By the end of August, 2008, the appellant told the Bradleys that the windows were still causing delays, and he scheduled their work to begin on September 11. That start date was later moved to September 15 for weather reasons, but the project was not started on that date. At that point, the complaint states, Philip Bradley contacted his village to determine the status of their permit application, and he was told that the defendants had not even submitted a permit application and that the defendants' business license had expired. The defendants were thereafter unable to produce an invoice for the windows, and they again failed to appear for a new, October 6, project start date.

¶ 4        According to the narrative in the complaint, the appellant suggested on October 7 that the Bradleys void the contract and pay a subcontractor $12,000 to perform all the work except for the windows. The Bradleys declined this suggestion and sought a refund of their deposit. The complaint states that the appellant "refused to issue a refund, stating, 'get in line.' " It also states that the defendants never issued a refund to the Bradleys or performed any work for them.

¶ 5        Based on these allegations, as well as other similar allegations relating to other homeowners, the complaint asserted counts based on the Consumer Fraud Act, the Home Repair Act, and the Roofing Act. On the first two counts, the complaint sought civil penalties, and on all three counts, the State sought an injunction permanently barring the defendants from engaging in any home repair or remodeling within Illinois.

¶ 6        The appellant filed a *pro se* answer to the complaint, but that answer included no response to the final six paragraphs of the complaint, which were among seven paragraphs contained in the three separate counts of the complaint following prefatory facts and materials. Those final six paragraphs alleged that, for the above reasons, the defendants violated the Consumer Fraud Act, that the defendants "in the course of advertising, offering for sale, selling and providing home repair, improvement and roofing services" violated the Home Repair Act, and that the defendants "violated Section 9 of the [Roofing Act] by engaging in the business of a roofing contractor, without having been duly licensed." The appellant retained counsel after he filed his answer.

¶ 7        The State thereafter filed a motion for summary judgment on all three counts of its complaint. In that motion, the State asserted that its material allegations had been established by evidence adduced in discovery, affidavits from consumers who had dealt with the appellant, the appellant's admissions in his answer, and the appellant's responses to interrogatories. In concert with those arguments, the State argued that the appellant's failure to answer certain of the complaint's allegations should be deemed an admission of those allegations.

¶ 8        Attached to the motion for summary judgment was an excerpt of deposition testimony in which the appellant stated that he owned and operated Boss Construction and Boss Home Improvement, as well as a third business, Boss Roofing and Sheet Metal. The appellant explained that he was not a licensed roofer and that Chuck Zalewski, the man who ran the

day-to-day operations of the roofing business, "had taken the test[ ] [a]nd the license was under Boss Roofing & Sheet Metal." The appellant insisted that his roofing work was run entirely by Zalewski.

¶ 9 The appellant agreed that his companies advertised in order to obtain customers. During the deposition, the appellant recounted his companies' dealings with several customers, and he agreed that Boss Home Improvement entered into contracts to provide roofing and other home repair services to consumers but then failed to perform the work. He agreed that he had received deposits from customers but then did no work and gave no refunds, and he often answered that he could not recall or did not know whether his companies gave consumers the statutorily required pamphlet or a notice of the right to cancel. Also attached to the motion for summary judgment were affidavits from consumers who had lost their deposits to the defendants and who stated that the defendants did not provide them with the brochure or notice of their right to cancel.

¶ 10 In his response to the motion for summary judgment, the defendant argued that he could not have violated the Consumer Fraud Act, because the State had not established his intent to defraud. He argued that he did not violate the Roofing Act, because all of Boss Home Improvement roofing work was completed by licensed roofing subcontractors or overseen by Zalewski, who was licensed. In response to the State's request that the appellant's failure to answer certain allegations be deemed an admission of those allegations, the appellant noted that he filed his answer without the assistance of a lawyer. He offered that his denials in response to the State's summary judgment motion represented his true position on the omitted matters, and he asked that the court allow the statements in his response to stand as his answer. In an affidavit attached to his response, the appellant attributed his companies' difficulties to dire economic conditions that made it more difficult to obtain materials or lines of credit.

¶ 11 In a November 2011 written order, the circuit court granted summary judgment to the State. In that order, the circuit court noted that the appellant did not refute the State's central narrative describing his taking consumers' deposits and failing to provide statutorily required paperwork. The court also noted the appellant's request to amend his answer to deny the final six paragraphs of the complaint, but the court denied leave to amend on the grounds that (1) the appellant never filed a "proper" motion to amend, (2) aside from pointing out that he was representing himself, the appellant offered no reason for his failure to respond fully to the complaint, and (3) the appellant responded to the other paragraphs of the complaint and thereby demonstrated his ability to respond, (4) the appellant had been represented by counsel long before he sought leave to amend his answer, and (5) *pro se* status does not excuse compliance with procedural rules.

¶ 12 Based on the undisputed facts, the circuit court concluded that the defendants violated the Consumer Fraud Act by taking customer deposits after their financial troubles began, so that they could " 'rob[ ] Peter to pay Paul.' " The court further ruled that the defendants violated the Consumer Fraud Act by failing to provide notice to consumers of their right to cancel their contracts. On the Home Repair Act claim, the court ruled the evidence undisputed that the defendants failed to provide the statutorily required pamphlets to customers. On the Roofing Act claim, the court ruled that, even if the defendants did not do

roofing work themselves, they advertised and offered roofing work despite having no licenses. Based on these conclusions, the court imposed a civil penalty against the defendants in the amount of $50,000, a penalty the court noted could be imposed under the Consumer Fraud Act without evidence of intent. The court also permanently enjoined the defendants from engaging in home repair or remodeling work in Illinois. The appellant now appeals the circuit court's ruling.

¶ 13 The appellant's first argument on appeal is that the circuit court erred in granting the State summary judgment on the counts of its complaint alleging violations of the Consumer Fraud Act and the Home Repair Act. According to the appellant, both statutes require proof of intent as a predicate to liability.

¶ 14 Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). "The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered." *American Family Mutual Insurance Co. v. Page*, 366 Ill. App. 3d 1112, 1115, 852 N.E.2d 874 (2006). "The propriety of a trial court's decision to grant summary judgment presents a question of law, which we review *de novo*." *Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 168, 877 N.E.2d 1171 (2007).

¶ 15 We begin by examining the Consumer Fraud Act, which declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2008). The appellant does not now dispute that he used or employed one of these deceptive practices in the conduct of a trade or commerce. Instead, he directs us to section 7 of the Consumer Fraud Act, which lays out remedies and penalties applicable to violations of the Act.

¶ 16 Section 7(a) empowers a court to impose injunctive relief. See 815 ILCS 505/7(a) (West 2008). Section 7(b) allows civil penalties, and it provides as follows:

"In addition to the remedies provided herein, *** the Court may impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under this Act. In the event the court finds the method, act or practice to have been entered into with the intent to defraud, the court has the authority to impose a civil penalty in a sum not to exceed $50,000 per violation." 815 ILCS 505/7(b) (West 2008).

¶ 17 In making its ruling, the circuit court carefully noted that it was limiting its civil penalties ruling to a single $50,000 penalty, rather than a "$50,000 per violation" penalty that would have required a finding of intent to defraud. The appellant argues, however, that even a single

$50,000 penalty requires intent to defraud. We disagree.

¶ 18    It is by now well established that "[t]he intent required by the Consumer Fraud Act 'is merely the defendant's intent that the plaintiff in the action rely on the *** information [the] defendant gave to plaintiff, as opposed to any intent *** to deceive' as required under the common law." *Miller v. William Chevrolet/Geo, Inc.*, 326 Ill. App. 3d 642, 655, 762 N.E.2d 1 (2001) (quoting *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App. 3d 810, 822, 616 N.E.2d 615 (1993)). Thus, the appellant is wrong when he argues that the Consumer Fraud Act required his intent to defraud here.

¶ 19    The appellant also argues that a finding that he possessed intent to defraud is required under the Home Repair Act. However, he cites no statutory language or case law for this proposition, and we find none ourselves. See 815 ILCS 513/20 (West 2008) (requiring the pamphlet but mentioning no intent element); 815 ILCS 513/35(b) (West 2008) (incorporating the penalties and remedies provisions of the Consumer Fraud Act into the Home Repair Act). It is a fundamental principle of statutory interpretation that a court must not read into a statute additional elements not intended by the legislature. *In re Andrew B.*, 237 Ill. 2d 340, 352, 930 N.E.2d 934 (2010). The legislature omitted any "intent to defraud" element from the Home Repair Act, and we will not now add one.

¶ 20    In a related argument, the appellant asserts that we must reverse the circuit court's Home Repair Act judgment because there remained at least a question of fact as to whether he knowingly failed to give consumers the informational pamphlet required by the statute. However, as the State notes on appeal, the appellant did not raise this argument at the circuit court level. As a result, we agree with the State that the appellant has forfeited the argument. *E.g.*, *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 64, 966 N.E.2d 1174 ("An argument that has not been raised in the trial court cannot be raised for the first time on appeal, even in the case of a summary judgment."). For these reasons, we reject the appellant's argument that he possessed insufficient intent to be held liable under the Consumer Fraud Act or the Home Repair Act.

¶ 21    The appellant's second argument on appeal is that the circuit court erred in finding him liable under the Roofing Act, because, to do so, it relied on a finding that he was not licensed, in spite of the fact that entities and workers related to his business were licensed. However, the circuit court based its ruling on this point on the idea that, by failing to answer certain allegations of the State's complaint, the appellant had admitted the allegations relevant to the Roofing Act. In so ruling, the circuit court denied the appellant leave to amend his answer to respond to the unanswered allegations. In his briefs to this court, the appellant does not even mention, much less challenge, the circuit court's decision to deny him leave to amend his answer. Thus, we will not disturb the circuit court's decision on that point.

¶ 22    On the larger point, the circuit court is correct that a party's failure to answer an allegation results in an admission of that allegation. See 735 ILCS 5/2-610(b) (West 2008) ("[e]very allegation *** not explicitly denied is admitted"). As a result, the appellant here admitted that he "violated Section 9 of the [Roofing Act] by engaging in the business of a roofing contractor, without having been duly licensed." Based on this admission, we must uphold the circuit court's ruling that he violated the Roofing Act.

¶ 23 The appellant's final argument on appeal is that the circuit court imposed an unduly harsh injunction permanently barring him from performing any home repair work in the State of Illinois. There can be no dispute that the circuit court was empowered to impose an injunction against the appellant under section 7(a) of the Consumer Fraud Act. 815 ILCS 505/7(a) (West 2008). The decision to impose an injunction rested within the discretion of the circuit court. See 815 ILCS 505/7(a) (West 2008) ("The Court, in its discretion," may impose an injunction.). We will not disturb the circuit court's exercise of discretion absent an abuse of discretion, that is, absent a showing that no reasonable person could agree with the circuit court's decision. See *DMS Pharmaceutical Group v. County of Cook*, 345 Ill. App. 3d 430, 445, 803 N.E.2d 151 (2003) (applying abuse of discretion standard of review to a decision to impose a permanent injunction); *Wade v. Wade*, 2012 IL App (1st) 111203, ¶ 13 (defining the abuse-of-discretion standard).

¶ 24 Generally, an injunction should be reasonable and should be only as broad as is essential to safeguard the rights at issue. See *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 29, 426 N.E.2d 824 (1981). The appellant asserts that the circuit court's injunction decision was unduly harsh because it barred him from performing an otherwise lawful activity upon which he depended for his livelihood. To make this argument, the appellant relies on the Seventh Circuit's decision in *People ex rel. Hartigan v. Peters*, 871 F.2d 1336 (7th Cir. 1989). In *Peters*, the defendant was accused of rolling back the mileage readings on automobile odometers and then reselling the automobiles under assumed names. *Peters*, 871 F.2d at 1338. The district court entered an injunction barring the defendant from "buying or selling any motor vehicle other than his own personal vehicle; withdrawing or transferring money from his two known bank accounts; removing, destroying or disposing of any of his [personal] property [or permitting another entity to do the same]; *** and expending any amount of money in excess of $100 without prior approval from a court-appointed receiver." *Peters*, 871 F.2d at 1343-44. The Seventh Circuit held that the injunction was overbroad, because it "prevent[ed] [the defendant] from engaging in activity that most people would consider normal and lawful–such as discarding an old newspaper or paying for automobile insurance without the receiver's permission." *Peters*, 871 F.2d at 1344. The Seventh Circuit continued: "Even given [the defendant's] propensity to discard important documents, the court cannot enjoin him from engaging in conduct unassociated with the illegal practices he is accused of committing. [The defendant] must be given some leeway to cover his basic living expenses ***." *Peters*, 871 F.2d at 1344.

¶ 25 By analogy to *Peters*, the appellant argues that the injunction here should be invalidated because it prevents him from partaking in a legal activity (home repair and remodeling) and curtails his ability to earn a living. However, the injunction in *Peters* failed not because it barred otherwise legal acts (all injunctions do if they have any use) or because it interfered with the defendant's ability to earn a living, but because the enjoined activity was unrelated to the defendant's illegal practices. That is, the problem in *Peters* was that the district court barred the defendant not only from buying and selling cars–the activity underlying his illegal acts–but also from a variety of unremarkable and unrelated quotidian tasks that are necessary to everyday life. As the State points out in its brief, the injunction in this case does not suffer from the same infirmity. The appellant engaged in a widespread practice of accepting

deposits from customers but then neither performing agreed-to home repair work nor refunding the deposits. The circuit court's injunction barring him from engaging in future home repair business addresses this very issue, and prevents its recurrence. The circuit court added no more prohibitions to the injunction, and it certainly added nothing as onerous and impractical as the injunction described in *Peters*. Thus, here, unlike in *Peters*, the circuit court limited the scope of the injunction to the activity underlying the appellant's illegal acts. As a result, we find *Peters* to be distinguishable from the current case, and we reject the appellant's argument that his injunction is invalid under *Peters*.

¶ 26　　　In his reply brief, the appellant contends that the injunction violates the language of the Consumer Fraud Act. The appellant argues that the Consumer Fraud Act allows injunctions only to restrain the use of "method[s], act[s] or practice[s]" that violate the statute. See 815 ILCS 505/7(a) (West 2008). However, the appellant raises this argument for the first time in his reply brief. "It is axiomatic that arguments raised for the first time in a reply brief are waived." *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill. App. 3d 490, 502, 932 N.E.2d 101 (2010); see Ill. S. Ct. R. 341 (eff. July 1, 2008). For that reason, we deem the appellant's contention forfeited, and we do not consider it further.

¶ 27　　　The appellant offers no other reason the injunction here should be considered an abuse of discretion, and we find none ourselves. Accordingly, we reject the appellant's assertion that the injunction imposed against him constituted an abuse of the circuit court's discretion.

¶ 28　　　Based on the above discussion, we affirm the judgment of the circuit court.

¶ 29　　　Affirmed.