AMERICAN HEALTH CARE PROVIDERS, INC., d/b/a AMERICAN HMO, Plaintiff-Appellant, v. THE COUNTY OF COOK et al.,[1] Defendants-Appellees.

First District (2nd Division)   No. 1—93—0751

Opinion filed August 9, 1994.

[1]By agreement Arthur Andersen & Company was dismissed from the appeal.

Collins & Collins, of Chicago (Harold Collins, Michael Collins, and Ann Higgins, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Karen Covy, Patricia Shymanski, and Jeffrey McCutchan, Assistant State's Attorneys, of counsel), for appellees County of Cook.

Earl L. Neal & Associates, of Chicago (Richard Friedman, of counsel), for appellee Health Care Service Corporation.

Hopkins & Sutter, of Chicago (Michael Conway and Kathleen Burch, of counsel), for appellees Chicago HMO Ltd. and Chicago Health Multi Option Insurance Ltd.

Davis, Miner, Barnhill, & Galland, P.C., of Chicago (George Galland, Jr., Kim Barbara Arnowitt, and Victor M. Gonzalez, of counsel), for appellee Humana Health Plan, Inc.

Davis, Miner, Barnhill & Galland, P.C., of Chicago (George Galland, Jr., Max Douglas Brown, and Mark Mantooth, of counsel), for appellee Rush-Presbyterian-St. Luke's Medical Center.

Kirkland & Ellis, of Chicago (Roger Taylor and Leonard Gail, of counsel), for appellee William S. Singer.

Arthur Andersen & Co., of Chicago (Sarah Biety, of counsel), appellee *pro se.*

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, American Health Care Providers, Inc., doing business as American HMO (American HMO), appeals from an order granting defendants' motions to dismiss counts I through IV of its second amended complaint (complaint), raising as issues whether (1) count I states a cause of action for a violation of the Cook County Minority Business Enterprises Ordinance § 10—43.1 *et seq.* (1990) (MBEO); (2) Cook County (County) must procure its contracts for employee health care programs through certain competitive bidding procedures; (3) count III sufficiently states a cause of action for misappropriation of public funds; and (4) count IV sufficiently states a cause of action for equitable relief. For reasons that follow, we affirm.

Defendant County, a home rule unit of government, sought to obtain health care coverage for its employees at a reduced cost while providing a high level of benefits. The County hired defendant William S. Singer as a consultant, who, acting for the County, delivered a request for proposals (RFP) to American HMO and 25 other companies. The RFP generally requested price quotations on several different types of health care plans, advised the bidders that the County had "the right to accept or reject any or all proposals or any portion thereof," and contained a provision which stated that "[t]he contract or contracts will be awarded by the County Board in its discretion." Without questioning these conditions, American HMO submitted its proposal to Singer in July 1991, as did several defendants. Singer elected to conduct negotiations with parties other than American HMO to develop the health care contracts eventually entered into by the County. The final contracts were awarded to defendants Chicago HMO Ltd. and Chicago Health Multi Option Insurance Ltd. (jointly Chicago HMO); and Humana Health Plan, Inc., and Humana Insurance Company (jointly Humana). The procurement process used by the County in securing the new contracts indisputably did not constitute competitive bidding. Significantly, American HMO had been providing health care benefits to the County for over seven years and had enrolled some 500 County employees in its plan under contracts with the County which had been negotiated in essentially the same manner as the present contracts, without protest. American HMO is a minority-owned business (MBE) as defined by the County's MBEO; Chicago HMO and Humana are not.[2]

American HMO's complaint contains six counts, only the first

---

[2]Both Chicago HMO and Humana, in their instant contract with the County, are required to use their best efforts to subcontract with minority-owned firms or individuals to attain the goal set forth in the MBEO.

four of which are at issue in this appeal. Count I alleges that the County violated the MBEO in several ways. Count II alleges that the County failed to bid competitively the new contracts. Count III alleges that the County misappropriated public funds by failing to bid competitively the new contracts. Count IV, entitled "Equity," repeats the other allegations.

In its various prayers for relief, American HMO requested the circuit court to void the new contracts; order the County to re-award the contracts in accordance with the MBEO or through competitive bidding; enjoin Chicago HMO, Humana, and the other defendant health care companies from receiving future contracts from the County; and award American HMO 25% of the County's health care contracts. Alternatively, American HMO sought $8 million in compensatory damages and $40 million in punitive damages.

The several defendants each filed a motion to dismiss counts I through IV pursuant to sections 2—615 or 2—619 of the Civil Practice Law (735 ILCS 5/2—615, 5/2—619 (West 1992) (section 2—615 or section 2—619)), all of which were granted. As to those counts, the circuit court also denied American HMO leave to amend and found no just reason to delay appeal of the claims made therein.

To overcome a motion to dismiss, facts must be asserted which establish a duty, a breach of that duty, and resulting injury. (*Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 969, 414 N.E.2d 104.) The standard of review on appeal from a section 2—615 motion to dismiss is whether the complaint sufficiently states a cause of action. (*McCormick v. Kruk* (1991), 220 Ill. App. 3d 449, 451, 581 N.E.2d 73.) Generally, a section 2—619 motion is properly allowed only when it raises affirmative matter which negates plaintiff's cause of action completely or when it refutes crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific facts. *Health Employees Labor Program v. County of Cook* (1992), 236 Ill. App. 3d 93, 97, 603 N.E.2d 591.

Both section 2—615 and section 2—619 motions based on affirmative matter admit as true, for purposes of the motions, all well-pleaded facts and reasonable inferences that could be drawn from those facts (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 190, 478 N.E.2d 603 (section 2—615); *Faerber Electrical Co. v. International Telephone & Telegraph Corp.* (1984), 123 Ill. App. 3d 704, 707, 463 N.E.2d 820 (section 2—619)), but not conclusions of law or conclusions of fact unsupported by specific facts (*Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299, 574 N.E.2d 1316 (section 2—615); *Bell Fuels, Inc. v. Lockheed Electronics Co.* (1985), 130 Ill. App. 3d 940, 943, 474 N.E.2d 1312 (section 2—619)). Additionally, in ruling on

a section 2—619 motion, the circuit court may consider pleadings, discovery documents and affidavits submitted by the parties. (*Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 914-15, 401 N.E.2d 1218.) Disputed questions of law are reviewed *de novo*. *In re Marriage of Skinner* (1986), 149 Ill. App. 3d 788, 791, 501 N.E.2d 311.

I

American HMO initially contends the circuit court erred in ruling that its complaint states no cause of action against the County for a violation of the MBEO.

•1 The MBEO's general provisions declare it the public policy of Cook County to promote the economic development of MBEs and female-owned businesses (WBEs), to have those businesses participate in the County's procurement process, and to provide those businesses increased opportunities for access to the County's procurement process. (MBEO § 10—43.1.) A contract compliance administrator (CCA) shall implement a program called the Cook County Affirmative Action/Procurement Program. (MBEO §§10—43.3(1) to 10—43.3(3).) The CCA's "duties shall include ***: [p]articipating in all purchasing, bidding, and awards processes[;] *** and [p]articipating in all pre-contract conferences." (MBEO §§10—43.3(3)(f), (g).) The MBEO states as "Programs Goals" that "[t]he total percentage of contracts awarded for protected class business shall be a goal of 30% "; and "[n]ot less than 25% of the total dollar amount of County contracts[ ] will be established as a goal to be awarded to minority owned business." MBEO §§10—43.5(A), (B).

American HMO maintains that the County has violated the MBEO in the following respects: it did not award 25% of its contracts to MBEs; it did not exercise its best efforts to comply with the MBEO guidelines; it prepared a misleading RFP which failed to disclose that the County would disregard all proposals for products not fully insured; it failed to comply with the notice requirements; it failed to deal with American HMO, the only qualified minority-owned HMO, on the subject contracts; it improperly delegated its best efforts duty to other contracting parties; and the CCA assertedly failed to participate in all "purchasing, bidding and awards processes" and "all pre-contract conferences" as required by the MBEO.

•2 American HMO's allegations boil down to the proposition that since it is the only MBE responding to the County's RFP, and the County chose not to award it any part of the health care contracts, *ipso facto*, the County has violated the MBEO. If American HMO's position were to be deemed correct, it would automatically be entitled to 25% of the County's health care contracts solely by virtue of its MBE status. The MBEO does not require the Cook County Board to

award American HMO the contracts at issue simply because it is a qualified MBE, especially where the Board determined, in an exercise of its discretion and home rule authority, that the County's interests would be better served by contracting with other parties.

The MBEO does not confer substantive rights, but merely sets forth the County's general goals and policies regarding minority participation in its contracts. The MBEO's plain language always refers only to "goals" of minority participation, not requirements. Webster's dictionary defines "goal" as "the end toward which effort or ambition is directed"; "aim, purpose"; and "a condition or state to be brought about through a course of action." (Webster's Third New International Dictionary 972 (1981).) To construe the MBEO otherwise could cause it to violate the equal protection clause. See *City of Richmond v. J.A. Croson Co.* (1989), 488 U.S. 469, 102 L. Ed. 2d 854, 109 S. Ct. 706.

American HMO nevertheless avers that the circuit court improperly disregarded its well-pleaded allegation that the County failed to use its best efforts to obtain MBE participation in the health care contracts. Three MBEO sections mention the words "best effort"—sections 43.6(A)(i)(6), 43.6(A)(i)(8)(a), and 43.8—but they do not prescribe a best efforts *duty* upon the County. The MBEO refers to "procurement 'best effort' *guidelines.*" (Emphasis added.) Although these are standards which the procurement personnel should use in an overall effort to make purchases from MBEs and WBEs, they create no best efforts duty. Assuming, *arguendo,* there was a best efforts duty, American HMO's count I fails to state a cause of action for the County's lack of best efforts, because it does not allege a proximately caused injury therefrom, or that total compliance with the best efforts program would have changed the outcome.

American HMO urges that the circuit court improperly disregarded its well-pleaded allegation that the County sent it an untimely and misleading RFP. The pertinent section of the MBEO creates an affirmative duty upon the County to notify MBEs and WBEs of upcoming bids relevant to their business, if they have completed the proper form. (MBEO § 10—43.6(A)(i)(3).) Here, the County sent American HMO an RFP which constituted sufficient and timely notice of the upcoming negotiation processes.

American HMO also alleges a violation of the MBEO for the CCA's lack of participation in the procurement process. Sections 10—43.3(3)(f) and (g) prescribe the CCA's duties. These procedural provisions are irrelevant, however, since the MBEO establishes only a general goal. The County can act in derogation of its own procedural rules and did so by amending the MBEO by implication. (*Landmarks Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 178-82,

531 N.E.2d 9 (*Landmarks*).) In *Landmarks*, our supreme court found that, as a general rule, courts may not adjudicate actions brought to overrule the decision of a legislative body based upon that entity's alleged failure to follow self-imposed requirements. *Landmarks*, 125 Ill. 2d at 179, quoting *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 574, 410 N.E.2d 61.

The circuit court's dismissal of count I of the complaint must be affirmed.

## II

The next issue is whether the County must procure its contracts for employee health care programs through a competitive bidding process.

Competitive bidding is not a prerequisite to a valid government contract and is not required unless imposed by statute. See, *e.g.*, *Smith v. Intergovernmental Solid Waste Disposal Association* (1992), 239 Ill. App. 3d 123, 138-39, 605 N.E.2d 654.

## A

●3 American HMO asserts that the circuit court erred in finding the County, as a home rule unit, exempt from the competitive bidding requirements contained in the Counties Code.[3]

Section 6(a) of article VII of the 1970 Illinois Constitution contains the general grant of home rule power, which provides in relevant part: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***." (Ill. Const. 1970, art. VII, § 6(a) (section 6(a)).) Therefore, the threshold question here is whether the questioned exercise of the subject power by the home rule unit pertains to its government and affairs. (See *Scadron v. City of Des Plaines* (1992), 153 Ill. 2d 164, 174, 606 N.E.2d 1154.) Section 6(a) was designed with the intention that home rule units be given the broadest powers possible. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1619 (Proceedings).) In addition, the Constitution specifically provides: "Powers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, § 6(m).) An exercise of power pertains to the home rule unit's government

---

[3]Section 5—36001 of the Counties Code prescribes in applicable part that "[a]ll contracts for supplies, material and work for the County of Cook shall be let as herein provided." (55 ILCS 5/5—36001 (West 1992).) Section 5—36006 provides that the County must engage in competitive bidding in awarding contracts for, *inter alia*, contractual services. 55 ILCS 5/5—36006 (West 1992).

and affairs where it relates to problems that are local in nature rather than State or national. *Village of Bolingbrook v. Citizens Utilities Co.* (1994), 158 Ill. 2d 133, 138, 632 N.E.2d 1000 (*Bolingbrook*); *Scadron*, 153 Ill. 2d at 175.

The method by which the County procures its contracts is a matter of local concern. Since the County's exercise of power relates to a problem overwhelmingly local in nature, it is a matter pertaining to its government and affairs under section 6(a).[4] See *Bolingbrook*, 158 Ill. 2d at 138-39.

Constitutional history strongly supports this finding. The framers listed "requirements for competitive bidding on contracts" as an example of the type of legislation the General Assembly may wish to enact as a limit on home rule power. (7 Proceedings 1644, 1643, 1599.) Implicitly, the method by which a home rule unit procures its contracts is a matter pertaining to its government and affairs.

Analogous decisions of our supreme court also support this finding. See *Allen v. County of Cook* (1976), 65 Ill. 2d 281, 288, 357 N.E.2d 458 (holding that "the manner in which [Cook County] appropriates funds *** is a matter 'pertaining to its government and affairs' "); *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook* (1991), 145 Ill. 2d 475, 483-85, 584 N.E.2d 116 (holding that Cook County has home rule powers to create and operate its own civil service system with regard to its employees) (*AFSCME*).[5]

The County's contract procurement method is a matter pertaining

---

[4]Even assuming there are State or national implications, the balancing test employed in those circumstances weighs in favor of local concerns. The court must evaluate the problem with due regard " 'for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it.' " *Bolingbrook*, 158 Ill. 2d at 139, quoting *Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 501, 470 N.E.2d 266.

[5]Parenthetically, American HMO mistakenly relies upon *O'Hare Express, Inc. v. City of Chicago* (1992), 235 Ill. App. 3d 202, 601 N.E.2d 846, in support of its position. That case is inapposite because there the question of home rule authority was never raised.

American HMO also insists that contracting through competitive bidding is necessary to prevent local political abuse. The framers, however, specifically stated that the possibility of local abuse is no reason to deny home rule powers:

"We agree *** that:

to its government and affairs under section 6(a). We next determine whether the General Assembly has restricted this power.

The powers of home rule units are not without bounds; under the Constitution, the legislature retains the authority to restrict the exercise of virtually all home rule powers. (*Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 131, 623 N.E.2d 281.) Limits to section 6(a)'s grant of power are contained in sections 6(g), 6(h), and 6(i) of article VII of the Constitution (Ill. Const. 1970, art. VII, §§6(g), 6(h), 6(i)), of which the latter two are at issue here. Under section 6(h), the General Assembly may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." (Ill. Const. 1970, art. VII, § 6(h) (section 6(h).) Section 6(i) states: "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i) (section 6(i)).

The framers noted that this constitutional scheme was intended to permit the General Assembly to act, with an ordinary majority, "in *any* matter even though it might 'pertain to the government and affairs' of a home-rule unit." (Emphasis in original.) (7 Proceedings 1643.) "[S]tate legislation always prevails when it expresses the intent to be exclusive and to preclude local regulation." (7 Proceedings 1643.) Otherwise, "home-rule units retain the power to act concurrently" and "are left free to complement the state activity." 7 Proceedings 1643-45.

American HMO contends that the General Assembly has "specifically designated competitive bidding a subject for *exclusive* control by the State *** by enacting a comprehensive statewide system of legislation requiring the State and each of its political subdivisions to award contracts by competitive bid." (Emphasis added.) This comprehensive scheme, it is argued, consists of relevant

---

['l]The abuse by local government of broad powers troubles the Commission minimally. It is not currently widespread in any serious way. The fact that abuse conceivably might occur is no more reason to deny broad delegations of power than it is to deny a Boy Scout a knife because he might cut himself.[']" (7 Proceedings 1615 (Committee Report, quoting ACIR, State Constitutional and Statutory Restrictions upon the Structural, Functional, and Personnel Powers of Local Government 72 (1962)).)

Further, the framers believed that home rule powers would restore accountability to local government officials, where it belongs. See 7 Proceedings 1608-09.

sections of the Illinois Municipal Code (65 ILCS 5/8—9—1, 8—9—2, 8—10—3, 8—10—4 (West 1992)); the Counties Code (55 ILCS 5/5—1022, 5—36006 (West 1992)); the School Code (105 ILCS 5/10—20.21 (West 1992)); the Township Law of 1874 (60 ILCS 105/1 (West 1992)); the Park District Code (70 ILCS 1205/8—1(c) (West 1992)); and the Illinois Purchasing Act (30 ILCS 505/1 *et seq.* (West 1992)). This entire argument rests upon the concept of a comprehensive scheme for competitive bidding; American HMO admits that the Counties Code does not contain an expression of exclusivity by the State.

Our supreme court has recently ruled that, to meet the requirements of section 6(h), legislation passed by the General Assembly must contain *express* language that the area covered by the legislation is to be *exclusively* controlled by the State and *"[i]t is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power."* (Emphasis added.) (*Bolingbrook,* 158 Ill. 2d at 138.) Accordingly, American HMO's comprehensive-scheme contention is rejected. The General Assembly cannot express an intent to exercise exclusive control over a subject through coincidental comprehensive regulation.

In addition, a home rule county can alter, amend, or simply abandon legislation contained in the Counties Code if it was enacted before the adoption of the 1970 Constitution and has not been "significantly altered" since. (*AFSCME,* 145 Ill. 2d at 483-85; *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166-67, 290 N.E.2d 240.) This is so because the Counties Code was adopted prior to home rule and was totally foreign to the concept. (*AFCSME,* 145 Ill. 2d at 484.) The supreme court has now made clear that, for the General Assembly to take *exclusive* control over a matter, the "alteration" required is an *express statement* that the area covered by the legislation is to be exclusively controlled by the State. *Bolingbrook,* 158 Ill. 2d at 138.

Here, both American HMO and the County focus upon section 5—36006 of the Counties Code (55 ILCS 5/5—36006 (West 1992) (section 5—36006)). They correctly agree that it was enacted decades before 1970. Since the adoption of our present Constitution, the General Assembly has revisited section 5—36006 on two occasions[6] (Pub. Act 85—917, eff. July 1, 1988; Pub. Act 86—962, eff. January 1, 1990),

---

[6]American HMO claims that the General Assembly has revisited section 5—36006 on three occasions since 1970. This is incorrect. The first amendment referred to was adopted before 1970 and therefore is irrelevant to our inquiry. Pub. Act 76—1024, app'd August 29, 1969 (raising the minimum dollar amount that triggers the competitive bidding requirements from $2,500 to $5,000).

but has not enacted the express language required by section 6(h). Therefore, we conclude, the General Assembly has not acted to take exclusive control over the County's home rule power to procure contracts with or without competitive bidding, although it could do so.

Has the General Assembly, through a *nonexclusive* exercise of power, limited the County's home rule powers by mandating it to conduct competitive bidding as provided in section 5—36006, as American HMO next posits? To do so, the General Assembly must have "significantly altered" that section with post-1970 amendments. (See *AFSCME*, 145 Ill. 2d at 483-85; *Kanellos*, 53 Ill. 2d at 166-67.) A nonexclusive exercise of power means that the local government is free to act concurrently and may complement the State law. (7 Proceedings 1643-45.) Home rule authorities, however, must conform with the uniform standards established by the General Assembly. *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 514, 389 N.E.2d 553, *superseded by statute in irrelevant part as stated in Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463, 474-75, 553 N.E.2d 362, modifying *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 489, 322 N.E.2d 11, *overruled in part on other grounds by Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493, *as stated in Metropolitan Sanitary District of Greater Chicago v. City of Des Plaines* (1976), 63 Ill. 2d 256, 260, 347 N.E.2d 716.

After the adoption of the 1970 Illinois Constitution, the General Assembly amended section 5—36006 in the late 1980s with Public Act 85—917 (Pub. Act 85—917, eff. July 1, 1988), which raised the minimum dollar amount triggering the competitive bidding process from $5,000 to $10,000. (1987 Ill. Laws 3907—08.) In our opinion, the raising of the minimum dollar amount, in itself, does not qualify as that kind of "significant alteration" alluded to in *AFSCME*.[7] See *AFSCME*, 145 Ill. 2d at 483-85.

In certain provisions of the Counties Code, the General Assembly

---

[7]As to the only other post-1970 amendment, American HMO itself acknowledges that it was minor and nonsubstantive, consisting mainly of recodification for the Illinois Compiled Statutes. Pub. Act 86—962, eff. January 1, 1990 (PA 86—962).

Notably, however, in PA 86—962 the General Assembly added new section 7—1001 to the Counties Code, which provides:

> "Nothing in this Code shall be construed to deny, limit or preempt the exercise of any power by a home rule unit, as defined in Section 6 of Article VII of the Illinois Constitution, where no such denial,

has expressly stated its intention to limit or preempt home rule powers. (See 55 ILCS 5/5—1009 (West 1992) ("[t]his Section is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax"); 55 ILCS 5/5—1069(d) (West 1992) ("requirement that mammograms be included in health insurance coverage *** is an exclusive power and function of the State and is a denial and limitation under Article VII, Section 6, subsection (h) of the Illinois Constitution of home rule county powers"); 55 ILCS 5/5—1069.1 (West 1992); 55 ILCS 5/5—1095 (West 1992).) These Code provisions show that if the legislature had intended to limit or preempt home rule powers here, it would have done so explicitly.

This conclusion is further bolstered by section 7 of the Statute on Statutes, which provides:

"No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 1992).

The above examination shows that the County need not abide by the competitive bidding requirements contained in the Counties Code, unless and until the General Assembly expresses a clear intent to limit or preempt the County's home rule power.

## B

●4 American HMO claims that the circuit court also erred in ruling that the County need not follow its own purchasing ordinance (Cook County Appropriations and Bidding Ordinance §§ 10—18, 10—19 (1990) (Bidding Ordinance)). This ordinance essentially tracks the language of section 5—36006 of the Counties Code. American HMO cites no authority in support of this contention.

In *Landmarks*, noted earlier, our supreme court found that courts may not adjudicate actions brought to overrule the decision of a legislative body based upon that entity's alleged failure to follow self-imposed requirements. (*Landmarks*, 125 Ill. 2d at 179, quoting *Chirikos*, 87 Ill. App. 3d at 574.) Courts have authority to invalidate

---

limitation or preemption existed under the corresponding prior statute." (Now 55 ILCS 5/7—1001 (West 1992) (eff. January 1, 1990).)
This provision provides further support for our conclusion that the legislature has not intended to limit or preempt the County's home rule power to procure contracts as it sees fit.

legislation only upon grounds that the enactment violates a provision of the Federal or State constitution or violates the mandate of a Federal or State statute. (*Landmarks*, 125 Ill. 2d at 179.) American HMO's contention therefore fails.

## C

•5 American HMO identifies error in the circuit court's finding that the County's health care contracts are exempt from the competitive bidding requirements by virtue of the professional services exception contained in the Counties Code and its own purchasing ordinance. Although we need not reach this issue, because we have already determined that the County, as a home rule unit, need not have followed the competitive bidding requirements in the Counties Code and its own ordinance, we nevertheless entertain this assertion as a supplementary argument.

American HMO relies entirely upon *Compass Health Care Plans v. Board of Education* (1992), 246 Ill. App. 3d 746, 617 N.E.2d 6 (*Compass*). There, the appellate court held that "an HMO contract is not a contract for the direct furnishing of medical services, such as physical examinations of students, but is, instead, merely a contract for the administration of an employee health care program [where the] employees select their own personal medical providers from a list of hospitals and doctors associated with the HMO." (*Compass*, 246 Ill. App. 3d at 750.) Therefore, the court concluded, on the facts of the case before it, the HMO contracts there at issue did not fall under the professional services exemption from competitive bidding contained in the School Code. *Compass*, 246 Ill. App. 3d at 748-53.

The circuit court here disagreed with the *Compass* decision and found it distinguishable. In *Compass* home rule authority was not at issue. The specific language of the County's Bidding Ordinance prescribes competitive bidding for some County contracts (Bidding Ordinance § 10—18); however, section 10—19, captioned "Award of Contracts Not Adaptable to Competitive Bidding," states in part:

> "Contracts which by their nature are not adapted to award by competitive biddings, such as contracts for the services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part *** shall not be subject to the competitive bidding requirements of this ordinance." (Bidding Ordinance § 10—19.)

The County submits that the health care contracts at issue in this case are a textbook example of the type of contract for which the professional exemption provision is intended. It notes that there are "myriad insurance coverages and types of direct service provisions

from which the County needed to choose a comprehensive health plan for numerous employees," including "point of service plans, dual choice options, fully or partially insured indemnified plans, ASO proposals, conventionally insured proposals, HMOs, PPOs, *et cetera* and any number of combinations of such different types of services." The County insists it must be permitted to use the negotiated RFP method by which various companies can submit unique proposals through an ongoing negotiating process. The County maintains it determined whether the health care contracts at issue are adaptable to competitive bid and concluded that they are not. (See *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785.) We agree.

The foregoing analysis supports the circuit court's conclusion that the subject contracts are not adaptable to competitive bidding procedures.

### III

In light of our conclusions set forth above, count III of the complaint does not state a cause of action for misappropriation of public funds, since the basis of this claim is the County's failure to procure its health care contracts through competitive bidding. Nor does count IV of the complaint state a cause of action for equitable relief based, as it is, upon the County's failure to comply with the MBEO and the competitive bidding statutes.

The reasons set forth above demonstrate the correctness of the circuit court's judgment in this case which, accordingly, requires its affirmance.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.