DMS PHARMACEUTICAL GROUP, Plaintiff-Appellant, v. THE COUNTY OF COOK, Defendant-Appellee.

First District (1st Division)    Nos. 1—02—1347, 1—02—3436 cons.

Opinion filed December 29, 2003.

Sidley, Austin, Brown & Wood, of Chicago (Kathleen L. Roach, Gabriel Aizenberg, and Preya B. Sharma, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Louis R. Hegeman, Paul A. Castiglione, and Lauretta H. Wolfson, Assistant State's Attorneys, of counsel), for appellee.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, DMS Pharmaceutical Group, Inc., filed a three-count complaint for declaratory and injunctive relief, a motion for a temporary restraining order and a preliminary injunction against

defendant, the County of Cook (the County). Plaintiff alleged that the County violated state law and its own competitive bidding ordinance by using requests for information (RFI) and requests for proposals (RFP) to award a contract to supply prescription medication and other pharmaceuticals to the County. The County filed a motion to dismiss plaintiff's complaint, arguing that it was not subject to the competitive bidding laws due to its status as a home rule entity under the Illinois Constitution and that the contract at issue was not adapted to competitive bidding.

The trial court granted the County's motion to dismiss on count I and plaintiff voluntarily dismissed counts II and III against the County. Plaintiff filed this timely appeal (No. 1—02—1347) arguing that the trial court erred by dismissing count I and urging this court to reverse the trial court and remand this case for further proceedings.

Plaintiff subsequently brought a separate suit for declaratory and injunctive relief in the circuit court against the County claiming that the County's Board of Commissioners (the Board) improperly delegated its power to expend taxpayer funds for the purchase of pharmaceuticals to the County's comptroller. The parties filed cross-motions for summary judgment and the trial court entered judgment on the merits in favor of the County and against plaintiff.

Plaintiff filed a subsequent timely appeal (No. 1—02—3436) alleging that the trial court erred by not entering declaratory and injunctive relief against the County and by impermissibly depriving it of any remedy. Plaintiff also argues that the trial court erred by not finding that the County unconstitutionally delegated its power to the comptroller and effectuated an unconstitutional change of government.

This court, *sua sponte,* moved to consolidate the two cases because each appeal is based on related actions of the County. For the reasons that follow, we affirm the judgment of the trial court in appeal numbers 1—02—1347 and 1—02—3436.

## BACKGROUND

### Appeal Number 1—02—1347

Plaintiff brought the action referenced in appeal number 1—02—1347 against the County challenging its methods for selecting a prime vendor to supply its pharmaceutical needs. In 1999, a task force appointed by the Cook County Bureau of Health Services (CCBHS) determined that the County should pursue a prime-vendor contract for the purchase of its prescription medications. The CCBHS is responsible for hospital facilities operated by the County, and it was

estimated that a prime-vendor contract would cost the County approximately $220 million over a three-year period. These facilities include Stroger Hospital of Cook County, Oak Forest Hospital of Cook County, Provident Hospital of Cook County, Cermak Health Services of Cook County, the Ambulatory and Community Health Network of Cook County, the C.O.R.E. Center and the Cook County department of health. Plaintiff had been a vendor of pharmaceuticals to the County for about five years prior to the RFP.

Count I of plaintiff's complaint[1] contends that section 5—36006 of the Illinois Counties Code (55 ILCS 5/5—36006 (West 2000)) (the Code) and section 10—18 of the Cook County Appropriations and Bidding Ordinance (the Ordinance) (Cook County Appropriations and Bidding Ordinance §§ 10—18, 10—19 (1994)), require the County to submit contracts for supplies in excess of $10,000 through competitive bidding. Instead of submitting the contract for competitive bidding, the County issued an RFI and an RFP to certain vendors, including plaintiff, to develop a plan to meet the County's needs relative to pharmaceuticals. Several proposals were submitted to the County, including a proposal from plaintiff. On November 28, 2001, at the conclusion of the RFP process, the CCBHS and the finance committee[2] recommended that the County negotiate a prospective contract with McKesson Pharmaceuticals (McKesson), plaintiff's competitor.

Section 5—36006 of the Code provides in pertinent part:
> "The purchases of and contracts for supplies, materials, equipment and contractual services *** shall be based on competitive bids. If the amount involved is estimated to exceed $10,000, sealed bids shall be solicited by public notice ***." 55 ILCS 5/5—36006 (West 2000).

Section 10—18 of the Ordinance provides in pertinent part: "Purchases of contracts and supplies, materials, equipment, and contractual services *** shall be based on competitive bids." Cook County Appropriations and Bidding Ordinance § 10—18 (1994).

On January 23, 2002, plaintiff filed a verified complaint for declaratory and injunctive relief and motions for a temporary restraining order and a preliminary injunction. Plaintiff claimed that use of the RFP process was a violation of state and County law.

---

[1] Plaintiff originally filed a three-count complaint in the circuit court. The trial court dismissed count I with prejudice and plaintiff voluntarily dismissed counts II and III. Counts II and III are not at issue in this appeal.

[2] The County states in its brief that all members of the Cook County Board of Commissioners are also members of the finance committee. The composition of the finance committee and the Board is, therefore, the same.

The County responds that plaintiff's recitation of the applicable facts in its brief is "woefully inadequate." On June 28, 2002, the County executed a three-year contract with McKesson, a single wholesaler of pharmaceutical products, for the procurement of prescription medications and services for the CCBHS. Prior to this contract, the County had purchased its pharmaceuticals through a series of contracts, which the CCBHS determined was inefficient, caused unacceptable delays in receiving medications and was very costly to the taxpayers.

The County's execution of the contract with McKesson was the culmination of a long, involved process in which the County attempted to address the problems relating to the timely delivery of critically needed medication and the unacceptably expensive delivery of pharmaceuticals. The County procures pharmaceuticals to serve the medical needs of approximately 500,000 low income and indigent citizens of Cook County. After several years of procuring its pharmaceuticals through the competitive bidding of multiple contracts, it became apparent that the old system was seriously flawed and unworkable.

Some of the issues plaguing the County were: frequent stock outages of necessary prescription medications, the recurring need to purchase large quantities of pharmaceuticals on an emergency basis to meet the day-to-day needs for critical drugs, excessive delays between the placement of orders and the delivery of pharmaceuticals to the CCBHS, the need to keep large stores of pharmaceuticals on hand in CCBHS pharmacies to assure availability, which resulted in huge fronting costs and spoilage, patient safety concerns resulting from drug shortages, the need to reduce the costs associated with delivery and an expanding clerical staff, and the crucial need to integrate a computerized system of tracking and ordering necessary pharmaceuticals on a 24-hour basis.

The CCBHS formed a committee to address and resolve the problems consisting of the directors of the four CCBHS pharmacies, the CCBHS's chief financial officer, hospital administrators and physicians (the CCBHS committee). The CCBHS committee studied some of the largest public health facilities in the nation, such as those in New York City, Houston, Denver, Los Angeles, Fort Worth, Dallas, San Francisco and the Veterans Administration in Chicago. The research revealed that the study subjects all used prime vendor arrangements, same-day electronic ordering, immediate product delivery services, group purchasing arrangements, instant stock delivery, alternative product choices and reductions in inventory. The CCBHS committee determined that similar systemic changes in the County's procure-

ment system would greatly exceed the savings that would be expected from simply purchasing its pharmaceuticals at the lowest possible price.

In July 2000, the CCBHS committee prepared and issued an RFI to ascertain ideas, interest and the potential capabilities of various wholesalers and purchasing organizations, including plaintiff. In May 2001, an RFP was issued and was intended as an administrative mechanism to identify prospective vendors that the CCBHS would consider recommending to the Board for the possible negotiation of a contract. The RFP indicated that the estimated amount of the contract was approximately $217 million over a three-year period. The RFP also had language stating that awarding the contract was subject to the approval and consideration of the Board, which may accept or reject any proposed contract in its sole discretion. Additionally, as this was not an invitation to bid, specific dollar amounts were not required and a contract to a specific proposer was not granted after the proposals were reviewed.

Relative to the review process, the County maintains that it evaluated the ability of the proposers to meet the changing needs of the County. Such factors included the proposer's size, breadth of experience, logistical capabilities, group purchasing arrangements, software competence, and overall corporate and financial breadth to consistently deliver a program which meets the unique size, mission and needs of the County. The "varied and changing needs," as the County puts it, reflect the County's role as the Midwest Region's Primary Response Center for medical emergency responses in the face of toxic or biochemical emergencies or attacks and the County's role as a provider of medical services to the indigent.

The County then reviewed the proposals and selected McKesson as the vendor with which it would contract[3] and decided not to negotiate with plaintiff. The County listed the following reasons why it chose to deal with McKesson and not plaintiff: McKesson has gross sales of over $1 billion, compared to plaintiff's gross sales of $35 million. McKesson services 5,000 institutions, while plaintiff services eight hospitals. McKesson has a sophisticated computer ordering and tracking system; plaintiff does not. McKesson distributes products nationwide and has multiple distribution centers and can guarantee

---

[3]The CCBHS concluded, after it completed its research and the RFP process, that negotiating a contract with McKesson would best serve the interests of the County and the taxpayers. The CCBHS recommended that the Board vote to execute a contract with McKesson. On June 18, 2002, the Board voted to execute a three-year, $217,047,688.33 contract with McKesson.

next-day delivery from a variety of warehouses. Plaintiff has only one warehouse and, in the County's experience with plaintiff, has been plagued by an inability to deliver critical goods, not in days, but weeks. McKesson has the ability to fill 98% of drug needs within a 24-hour span and can deliver products on a seven-day basis. Plaintiff declined to provide Sunday deliveries and offered limited Saturday deliveries. McKesson has several thousand employees while plaintiff has 24. Plaintiff represented to the County that it served one other hospital in Cook County, but it declined to reveal the identity of the institution. McKesson identified and provided the names of contact persons for the institutions it serves, including the University of Chicago, University of Illinois at Chicago Hospital, Trinity Hospital, Christ Hospital and Ravenswood Hospital, all of which are located in Cook County.

On January 23, 2002, plaintiff filed its first lawsuit against the County, which the trial court dismissed pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)). Plaintiff now appeals to this court, contending that the trial court erred in dismissing its complaint against the county because: (1) no legislative act authorized the County's violation of its own competitive bidding ordinance; (2) the County could not ignore its mandatory bidding ordinance in awarding the contract to McKesson; and (3) the contract does not fall within the professional services exception to the bidding ordinance. The County claims that: (1) it has no duty to competitively bid contracts for the delivery of pharmaceutical products; (2) *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 772 (1994), is controlling authority and applies directly to the case *sub judice*; and (3) as a proposer, plaintiff does not have the right to seek an order enjoining the McKesson contract.

### Appeal Number 1—02—3436

On June 17, 2002, plaintiff filed a second lawsuit against the County arising out of the same course of action taken by the County relative to its dealing with McKesson. Plaintiff sought to enjoin the manner in which the County was paying McKesson for products it delivered to the CCBHS. Plaintiff claims that the Board unconstitutionally delegated its power to the comptroller thereby changing the form of government. In addition, plaintiff claims that the trial court erred by not granting injunctive and declaratory relief on plaintiff's behalf after finding that the County violated a mandatory provision in its ordinance.

On June 18, 2002, the Board voted to execute a three-year,

$217,047,688.33 contract with McKesson. Before it executed the contract, the Board first authorized a budget expenditure on December 4, 2001, of $217,047,688.54 and an annual line item of $38,284,439.40 in year one, $85,992,318.54 in year two and $92,284,439.40 in year three.[4] In subsequent sessions, the Board reauthorized the contract and expenditures and then voted on June 4, 2002, to authorize the comptroller to make payments upon notification from the CCBHS that the pharmaceutical products from McKesson had been delivered. Following the payment, the comptroller was to apprise the Board and the finance committee of outlays and expenditures pursuant to the budgetary authorization.

Plaintiff takes issue with the County's procedure for approving expenditures over $10,000. Section 10—17 of the Ordinance reads as follows:

> "The Board of Commissioners of Cook County shall have no power or authority to delegate to any committed or other person the 'power to act,' when such 'power to act' shall involve the letting of any contract or the expenditure of public money exceeding the sum of $10,000, except in the following instances: The payment of public utility bills and the payment of rent, pursuant to the provisions of a lease previously approved by the Board of County Commissioners; and any action of said Board, or of any committee thereof, or of any other person or persons in violation of this section shall be null and void. No money shall be appropriated or ordered paid by said County Commissioners, beyond the sum of $10,000, unless such appropriation shall have been authorized by a vote of at least two-thirds of the members elected to the said County Board." Cook County Appropriations and Bidding Ordinance § 10—17 (1994).

The parties filed cross-motions for summary judgment, and the trial court found in favor of the County and against plaintiff. The court found that no delegation of the Board's power occurred but that the statute was mandatory in nature and the Board was obligated to comply with it. However, the trial court refused to grant the relief requested by plaintiff after balancing the equities. The trial court determined that the detriment to the County's taxpayers would be substantial and the benefit to plaintiff, which claimed standing as a taxpayer, would be little if not outright detrimental.

---

[4]The contract between McKesson and the County is about to enter its third and final year.

## ANALYSIS
## Appeal No. 1—02—1347

### I
### Standard of Review

■ Plaintiff appeals from an order granting the County's motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 2000). Appellate review of a dismissal pursuant to section 2—619 is *de novo* and, thus, a reviewing court need not defer to the circuit court's reasoning. *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 662 N.E.2d 1358 (1996). The relevant inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993). In making this determination, we will construe all pleadings and supporting documents in the light most favorable to the nonmoving party. *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34, 629 N.E.2d 690 (1994).

### II

Plaintiff first argues that the County could not act in derogation of its own ordinance and, therefore, was required to follow its bidding ordinance for this contract, if it was acting administratively as opposed to legislatively. See *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 749 N.E.2d 916 (2001). The County responds that, as a home rule entity, it is authorized to determine its own methods and procedures for making and performing a contract.

■ Section 6(a) of article VII of the 1970 Illinois Constitution contains the general grant of home rule power, which provides in relevant part: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***." Ill. Const. 1970, art. VII, § 6(a). Therefore, the threshold question here is whether the questioned exercise of the subject power by the home rule unit pertains to its government and affairs. *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174, 606 N.E.2d 1154 (1992). Section 6(a) was designed with the intention that home rule units be given the broadest powers possible. 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1619 (Proceedings). In addition, the Constitution specifically provides: "Powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m). An exercise of power pertains

to the home rule unit's government and affairs where it relates to problems that are local in nature rather than state or national. *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 158 Ill. 2d 133, 138, 632 N.E.2d 1000 (1994); *Scadron*, 153 Ill. 2d at 175.

■ The method by which the County procures its contracts is a matter of local concern. *American Health Care*, 265 Ill. App. 3d at 926. Since the County's exercise of power relates to a problem overwhelmingly local in nature, it is a matter pertaining to its government and affairs under section 6(a). See *Bolingbrook*, 158 Ill. 2d at 138-39. Furthermore, competitive bidding is not a prerequisite to a valid government contract and is not required unless imposed by statute. See, *e.g.*, *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 239 Ill. App. 3d 123, 138-39, 605 N.E.2d 654 (1992).

■ The powers of home rule units, however, are not without bounds. *American Health Care*, 265 Ill. App. 3d at 927. Under the Constitution, the legislature retains the authority to restrict the exercise of virtually all home rule powers. *Nevitt v. Langfelder*, 157 Ill. 2d 116, 131, 623 N.E.2d 281 (1993). Limits to section 6(a)'s grant of power are contained in sections 6(g), 6(h), and 6(i) of article VII of the Constitution (Ill. Const. 1970, art. VII, §§ 6(g), (h), (i)), of which the latter two are at issue here.

Under section 6(h), the General Assembly may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). Section 6(i) states: "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). Our supreme court has held that, for the General Assembly to take exclusive control over a matter, the "alteration" required is an express statement that the area covered by the legislation is to be exclusively controlled by the State. *Bolingbrook*, 158 Ill. 2d at 138; see also *American Health Care*, 265 Ill. App. 3d at 928-29.

■ Plaintiff does not contend that the General Assembly had shown an intent to exclusively control this aspect of home rule entities or that this court may decide challenges to legislative action that is not in violation of state or federal constitutional or statutory requirements. Therefore, plaintiff's claim that the County's action violated state law must fail.

Plaintiff does, however, strenuously argue that the County's action was administrative in nature and therefore subject to review by this court for failure to follow its own self-imposed rules. *Landmarks*

*Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 180-81 (1988); *Living Word*, 196 Ill. 2d at 13. Plaintiff relies on several cases to support its assertions that the County was acting administratively when it awarded the contract to McKesson. We find these cases to be inapposite.

Plaintiff contends that *Landmarks* and *Living Word* stand for the proposition that when a home rule entity acts administratively, it cannot do so in derogation of its own ordinances. *Landmarks*, 125 Ill. 2d at 180-81; *Living Word*, 196 Ill. 2d at 13. The action taken by the Chicago city counsel in *Landmarks*, the passage of an ordinance, was legislative in nature. *Landmarks*, 125 Ill. 2d at 180. There was no detailed discussion of the distinction between legislative and administrative action. The *Landmarks* court did, however, give an example of administrative authority exercised by a legislative body. *Landmarks* referred to action taken by a legislative body pursuant to the establishment of a separate board or agency, such as a zoning board, and indicated that such action could be administrative. *Landmarks*, 125 Ill. 2d at 180.

In *Living Word*, the action was the denial of a special use permit for a church. There, the *Living Word* court, although it did not determine whether the home rule entity was acting administratively or legislatively, concluded that if the City of Chicago Heights was acting administratively, it could not deny the church in that case a special use permit because the city's subsequently stated comprehensive plan was inconsistent with its zoning law. *Living Word*, 196 Ill. 2d at 19-20. A major distinction in *Living Word* is that the decision made by the City of Chicago Heights was action pursuant to the authority of the zoning ordinance, as indicated by way of example in *Landmarks*. *Living Word*, 196 Ill. 2d at 19-20; *Landmarks*, 125 Ill. 2d at 180. Additionally, and significantly in our view, a discussion of home rule authority and the *Landmarks* case is noticeably missing from the analysis in *Living Word*. Furthermore, in *Ertl v. City of De Kalb*, 303 Ill. App. 3d 524, 708 N.E.2d 574 (1999), the court held that the complained-of action there was administrative and therefore subject to review by the court. *Ertl*, 303 Ill. App. 3d at 530. The plaintiff in *Ertl* sued the City of De Kalb for terminating his employment by action of the City of De Kalb's board of fire and police commissioners, which "exist[ed] solely pursuant to the General Assembly's delegation of authority." *Ertl*, 303 Ill. App. 3d at 530.

■ In our view, the actions of the County were legislative in nature. In contrast to the cases upon which plaintiff relies, the Board in this case was not acting pursuant to a specific ordinance prescribing the guidelines for its action, as would be the case in the application of zon-

ing provisions or the termination of a civil servant's employment. *Living Word*, 196 Ill. 2d at 19-20; *Ertl*, 303 Ill. App. 3d at 530. Here, a serious problem relating to the public health and general welfare of Cook County residents was presented to the County after years of fact finding and data gathering. The County officials were obligated to propose a solution. Based on the information it had before it, in conjunction with the exercise of judgment it was elected to carry out, the Board decided that a new system for procuring prescription drugs was necessary.

To effectuate this end, the County decided to get input from experts in the field, including plaintiff. After receiving the information needed to more fully understand its needs, the County requested proposals from the leaders in the field, including plaintiff. Based on its findings following the RFI and the RFP, the County voted to forgo competitive bidding and chose to negotiate a contract with the provider that could best suit its needs. We cannot conclude, under these circumstances, that the County was acting in an administrative capacity and, therefore, we will not review its action absent a violation of constitutional magnitude or a violation of applicable statutes. *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 404, 519 N.E.2d 447 (1988); *Landmarks*, 125 Ill. 2d at 179.

As to plaintiff's claim that *American Health Care* "is contrary to the overwhelming weight of authority, invites a state of anarchy and should be overruled," we disagree with plaintiff's interpretation. Although *American Health Care* does not include an analysis of legislative versus administrative action, its conclusion and analysis are otherwise sound and correct. Contrary to plaintiff's assertion, *American Health Care* did not hold that home rule units may act in derogation of law regardless of whether they act legislatively. The bases for the holding in *American Health Care* were that home rule entities were not bound to follow statutes or their own ordinances unless the state specifically indicated that it was required and that the contract at issue there was not adaptable to the competitive bidding statute. We decline plaintiff's invitation to "modify" or "overrule" *American Health Care*.

## III

Plaintiff argues that the County was required to let the contract pursuant to section 10—18 of the County Ordinance even if it was acting legislatively because the ordinance was mandatory. Plaintiff suggests that the word "shall" in section 10—18 of the County Ordinance makes the provision mandatory. Plaintiff contends that the failure to comply with a mandatory provision of an ordinance will render void

the proceeding to which it relates. *In re Application of the County Collector*, 132 Ill. 2d 64, 75, 547 N.E.2d 107 (1989) (*Kane County Collector*), citing *Hester v. Kamykowski*, 13 Ill. 2d 481, 484-85, 150 N.E.2d 196 (1958). We disagree with plaintiff's conclusion.

■ If a statutory "provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time." *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21, 373 N.E.2d 1332 (1978). A statute or ordinance is mandatory when it prescribes the result that will follow if the required acts are not done. *Sip & Save Liquors, Inc. v. Daley*, 275 Ill. App. 3d 1009, 1017, 657 N.E.2d 1 (1995). "[S]trict observance of a directory provision is not essential to the validity of the proceedings" thereunder. *Sip & Save*, 275 Ill. App. 3d at 1017.

The cases cited by plaintiff are distinguishable on their facts. In *Kane County Collector*, the appropriations ordinance for taxation purposes in Aurora required publication of the appropriations ordinance and a passage of 10 days before the ordinance was to take effect. *Kane County Collector*, 132 Ill. 2d at 68. The ordinance at issue there was held to be mandatory, because it clearly stated that it would not become effective until after it had been published and the time prescribed by "law" had passed. *Kane County Collector*, 132 Ill. 2d at 72. In the *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 63, 660 N.E.2d 875 (1995), our supreme court did not discuss the principles relative to mandatory versus directory provisions. The *City of Elgin* court merely cited to *Kane County Collector* for the proposition that legislative acts are not subject to review unless the legislative body violates a mandatory statute. *City of Elgin*, 169 Ill. 2d at 63. More importantly, the court then affirmed the dismissal of the plaintiff's complaint that the county in that case failed to comply with its own ordinances. *City of Elgin*, 169 Ill. 2d at 86.

The *Living Word* case is, likewise, distinguishable from the statute at issue here and plaintiff's reliance on it is misplaced. The ordinance at issue in *Living Word* had strict notice and hearing procedures incorporated into its language before an amendment could be made to that zoning ordinance. *Living Word*, 196 Ill. 2d at 24. The *Living Word* court further held that the city's denial of the special use permit in that case was arbitrary and capricious and constituted a *de facto* amendment of the zoning ordinance. None of the procedures that the *Living Word* court found were designed to safeguard the rights and interests of the public were undertaken in that case. *Living Word*, 196 Ill. 2d at 24.

Additionally, plaintiff contends that a statute is mandatory when

the word "shall" appears and it secures important public and individual rights and benefits. *Stull v. Department of Children & Family Services*, 239 Ill. App. 3d 325, 333, 606 N.E.2d 786 (1992). This principle is not applicable in the instant case. In *Stull*, the court was to determine if an administrative agency properly denied plaintiff Stull's request to expunge an indication of sexual exploitation from the State's central register. *Stull*, 239 Ill. App. 3d at 327. The court stated:

> " '[W]hen a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends on its purpose. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. If, however, the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory.' "
>
> *Stull*, 239 Ill. App. 3d at 333, quoting *Andrews*, 71 Ill. 2d at 21.

The court in *Stull* held that the lengthy delay in the appeal process in that case was unreasonable and served to deprive Stull of the fundamental fairness that due process requires. *Stull*, 239 Ill. App. 3d at 335. The rights implicated by the provision in *Stull* were of constitutional import, and for that reason we find it distinguishable from the instant case. The failure to comply with the ordinance at issue here will not inflict injury upon or deprive an individual of substantial rights.

■ We hold that section 10—18 of the County Ordinance is not mandatory because no language prescribes the result that will follow if the required acts are not done and there is no notice and hearing provision required before an action may take effect. Furthermore, we find that the ordinance merely directs a manner of conduct for the guidance of the officials and is not designed to safeguard individual rights.

## IV

Plaintiff argues that the nature of the contract for pharmaceutical products in the instant case does not fall under the exemption to the bidding ordinance in section 10—19 of the County Ordinance and dismissal on that ground should be reversed. We note that, based on our disposition of the above issues, we need not address this argument by plaintiff. However, even were this court to consider this issue, we disagree with plaintiff's contention.

Plaintiff cites to *Compass Health Care Plans v. Board of Education of the City of Chicago*, 246 Ill. App. 3d 746, 753, 617 N.E.2d 6

(1992), for the proposition that for a contract to fall under the exception in section 10—19, it must be one "which by its very nature is not adapted to award by competitive bidding."

First, our interpretation of *Compass* is different from plaintiff's. In that case, the court held that the contracts at issue were not awarded on the basis of the professional skills, program offerings or cost effectiveness of each health maintenance organization (HMO) but, rather, on the number of enrollees in each of the HMO plans offered to Chicago public school employees. *Compass,* 246 Ill. App. 3d at 753. Another distinction between the instant case and *Compass* is that the entity in *Compass* was not a home rule entity. As indicated above, home rule entities have broad discretion to act relative to local matters.

Second, much of plaintiff's argument relating to this issue relies on the fact that this pharmaceutical contract is simply a contract for goods.[5] We do not agree. The decision to negotiate this contract instead of allowing competitive bidding squarely addresses important local issues that require local solutions. This problem requires local action by the County officials who were elected to confront these issues.

Based on the record, we find that the contract at issue was not adaptable to competitive bidding.

## Appeal No. 1—02—3436

## V

## Standard of Review

■ The standard of review in an appeal arising from an order granting summary judgment on issues of law is *de novo. Murneigh v. Gainer,* 177 Ill. 2d 287, 298, 685 N.E.2d 1357 (1997). However, the circuit court's ruling with respect to the elements of a permanent injunction, such as the balancing of the equities, may not be reversed absent an abuse of discretion. *Young v. Mory,* 294 Ill. App. 3d 839, 844, 690 N.E.2d 1040 (1998).

## VI

■ In its second appeal, plaintiff raises two main issues. The first claim is that the Board impermissibly and unconstitutionally delegated

---

[5]Plaintiff contends in its brief that the letting of a contract is, by its very nature, an administrative act for the delivery of goods. Plaintiff cites to *Stanley Magic-Door, Inc. v. City of Chicago,* 74 Ill. App. 3d 595, 597-99, 393 N.E.2d 535 (1979), among other cases, to support this contention. However, the facts of this case demand a closer analysis and the record clearly shows that this is not a simple contract for goods.

its spending authority to the comptroller. The second claim is that the trial court unconstitutionally failed to grant relief to plaintiff when it determined that the County failed to comply with the County's own mandatory provision. We will address each argument in turn.

Plaintiff contends that the Board transferred its power to the comptroller, who is an executive official, constituting an unconstitutional change in the form of government. We disagree. After reviewing the record, we agree with the trial court that the authorization of the comptroller to pay invoices upon receipt on a contract that the County has approved and for which a budget appropriation has been made is not a transfer of power from one branch of government to another.

Plaintiff relies on *Pechous v. Slawko*, 64 Ill. 2d 576, 357 N.E.2d 1144 (1976). There, the relevant statutes provided that the mayor possessed the authority to appoint and remove certain village officers. By ordinance, the council removed those officers and appointed replacements. Our supreme court held that under the relevant provisions, the statutory pattern established the relative powers and functions of the executive and legislative branches and that the transfer of the appointive power from the executive to the legislative branch effected without a referendum was unconstitutional. In *Dunne v. County of Cook*, 164 Ill. App. 3d 929, 518 N.E.2d 380 (1987), the county board passed ordinances granting the commissioners the power to hire and fire their own staffs and to expend funds in connection with the compensation of employees. This court found that Illinois statute vested this power of appointment in the chief executive of the Board and that a change to the appointment power constituted a change in the form of government.

In contrast to the attempts to usurp power vested in the mayor and the president respectively in the *Pechous* and *Dunne* cases, the approval by the Board to allow the comptroller to issue checks to McKesson was purely ministerial. The comptroller does not exercise any judgment or discretion in the payment of the McKesson contract. Before paying invoices under the McKesson contract, the comptroller does the following: (1) The comptroller only pays out of the annual account previously authorized by vote of the Board. (2) The comptroller ensures that sufficient funds are available in the annual budgeted account to cover the invoice. (3) If the invoice does not exceed the funds in the account, the comptroller makes the payment. (4) If the invoice exceeds the funds in the account, the comptroller does not make payment because he does not have authority to make payments beyond the amounts specifically authorized by the County Board. (5) After payment the comptroller reconciles the balance in the account and reports the interim account payouts on a monthly basis to the Board.

The County further argues that the comptroller pays the invoices on a clerical basis only. He does not determine the budget amount to be spent on the contract, the payee, or the type, quantity, manufacture pricing or discount to be applied to the pharmaceuticals to be purchased by the county. No powers or authority have been vested in the comptroller as a result of the Board's action.

The County claims that all matters requiring the exercise of its powers had been executed prior to the vote to allow the comptroller to make payments in excess of $10,000 upon receipt of verification from the CCBHS. The County concludes that the comptroller has a very narrow ministerial function of simply issuing a check to McKesson after verification of delivery from the CCBHS.

We agree with the County and the trial court's finding that this is merely a ministerial exercise and no change in the form of government has occurred.

## VII

Plaintiff next argues that the trial court was obligated to provide it with a remedy for the County's failure to follow its own mandatory ordinance for paying invoices over $10,000. The relevant portion of the ordinance reads as follows:

"The Board of Commissioners of Cook County shall have no power or authority to delegate to any committed or other person the 'power to act,' when such 'power to act' shall involve the letting of any contract or the expenditure of public money exceeding the sum of $10,000, *** and any action of said Board, or of any committee thereof, or of any other person or persons in violation of this section shall be null and void. No money shall be appropriated or ordered paid by said County Commissioners, beyond the sum of $10,000, unless such appropriation shall have been authorized by a vote of at least two-thirds of the members elected to the said County Board." Cook County Appropriations and Bidding Ordinance § 10—17 (1994).

We hold that the trial court properly denied plaintiff its requested relief.

Although the trial court found that the County should have followed its mandatory ordinance, the court's denial of equitable relief was proper. Plaintiff argues that the Illinois Constitution requires that the trial court find a certain remedy for the wrong that the County committed. Ill. Const. 1970, art. I, § 12. This provision, however, is an expression of philosophy and not a mandate to courts to provide a remedy in any specific form. *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 424, 490 N.E.2d 665 (1986). Moreover, a court of chancery may grant relief upon such terms as it deems equitable, and it will not

require the doing of an act that will result in little benefit to one but great hardship to another. *Beloit Foundry Co. v. Ryan*, 28 Ill. 2d 379, 392, 192 N.E.2d 384 (1963).

The trial court, as evidenced in the record, balanced the equities after conducting a thorough review of all the relevant circumstances and concluded that an undue hardship would result for the County and the County's taxpayers. The circuit court's ruling with respect to the balancing of equities may not be reversed absent an abuse of discretion. *Young*, 294 Ill. App. 3d at 844. We find that the trial court properly balanced the equities and determined that the requested relief would impose great hardship on the County and little benefit to plaintiff.

We find it important to note that plaintiff brings this cause at equity against the County in its capacity as a taxpayer. Plaintiff alleges that it had an interest in the misuse of taxpayer funds in the instant case and requested that the trial court enjoin the manner in which the comptroller was paying the McKesson contract. The trial court, however, found that enjoining the comptroller from paying as contemplated in the contract would result in late fees not contemplated in the contract. The burden of the late fees would fall squarely upon the shoulders of the County's taxpayers, a group to which plaintiff belongs. We therefore hold that the trial court did not abuse its discretion.

## VIII

### Conclusion

For the forgoing reasons, we hold the trial court properly granted the County's motion to dismiss in appeal number 1—02—1347. We also hold that the trial court properly granted summary judgment in favor of the County and against plaintiff in appeal number 1—02—3436. As a result of our holding on the above issues, we need not address the issues of standing, *laches* and unclean hands raised by the County. The rulings of the circuit court are, therefore, affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.